**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Jose MEDINA, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 13, 2013.

Filed May 28, 2014.

Peter Carr, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Norman O. Scott, Philadelphia, for appellee.

BEFORE: BENDER, P.J., FORD ELLIOTT, P.J.E., GANTMAN, J., PANELLA, J., DONOHUE, J., SHOGAN, J., MUNDY, J., OTT, J., and WECHT, J.

OPINION BY MUNDY, J.:

The Commonwealth appeals from the August 2, 2011 order, granting Appellee, Jose Medina's petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. After careful review, we affirm.

The PCRA court summarized the relevant facts and procedural history of this case, in its 217–page opinion, as follows.

In November 1992, 19 year-old [Appellee] was convicted of murder and sentenced to life without parole for the stabbing death of William Bogan. [Appellee] was convicted based on the emotional testimony of a 12–year–old boy named Michael Toro who intermittently claimed that he witnessed and did not witness the stabbing. Michael's 11–year–old brother, Hector Toro, also testified at trial that when he was just 10 years old[,] he had seen a drunken [Appellee] earlier in the evening of the murder, brandishing a knife and stating that he would kill someone that night. [Appellee] presented a defense that he was visiting the neighborhood from Reading in order to attend a friend's daughter's birthday party and presented evidence of his good character. The friend testified confirming the existence of his daughter's birthday and party. The police officer who arrested [Appellee] not long after the stabbing found him not drunk and in possession of a birthday card, a few dollars, and his white sweatshirt. No physical evidence was ever found linking [Appellee] to the crime, including the stolen wallet, the knife used in the stabbing or any blood stains on the white sweatshirt that [Appellee] was wearing. No evidence was presented of [Appellee] and William Bogan ever having met nor was there any evidence of a motive for the killing. [Appellee] had no prior convictions and has for nearly twenty years steadfastly maintained his innocence.

PCRA Court Opinion, 8/2/11, at 1–2 (footnotes omitted).

On November 12, 1992, the jury found Appellee guilty of first-degree murder, robbery, and possessing an instrument of a crime (PIC).[1] On November 5, 1993, the trial court imposed an aggregate sentence of life imprisonment without the possibility of parole. On direct appeal, this Court concluded that Appellee's argument that trial counsel was ineffective for not challenging Michael Toro's competency as a witness may have had merit. *Commonwealth v. Medina*, 447 Pa.Super. 631, 668 A.2d 1194 (1995) (unpublished memorandum at 20). As a result, on August 31, 1995 we vacated the judgment of sentence and remanded for an evidentiary hearing on this claim. *Id.* On February 16, 2001, this Court ultimately affirmed the judgment of sentence. *Commonwealth v. Medina*, 776 A.2d 1007 (Pa.Super.2001) (unpublished memorandum). Appellee did not file a petition for allowance of appeal with our Supreme Court.

On December 11, 2001, Appellee filed a timely PCRA petition, alleging various errors of ineffective assistance of counsel. On September 27, 2002, the PCRA court dismissed Appellee's petition. On September 17, 2003, this Court affirmed the PCRA court's order. *Commonwealth v. Medina*, 835 A.2d 833 (Pa.Super.2003) (unpublished memorandum), *appeal denied*, 576 Pa. 721, 841 A.2d 530 (2003).

On January 13, 2004, Appellee filed a petition for a writ of *habeas corpus* in the

---

1. 18 Pa.C.S.A. §§ 2502(a), 3701(a), and 907(a), respectively.

United States District Court for the Eastern District of Pennsylvania. On June 2, 2005, the District Court granted the writ on the basis that trial counsel was ineffective for not challenging Michael Toro's competency to testify. *Medina v. Diguglielmo*, 373 F.Supp.2d 526, 543–544 (E.D.Pa.2005), *reversed*, 461 F.3d 417 (3d Cir.2006), *cert. denied*, 551 U.S. 1115, 127 S.Ct. 2934, 168 L.Ed.2d 265 (2007). On August 31, 2006, the Court of Appeals reversed. Although it agreed with the District Court that trial counsel was ineffective, it disagreed that Appellee had demonstrated prejudice. *Medina v. Diguglielmo*, 461 F.3d 417, 432 (3d. Cir.2006), *cert. denied*, 551 U.S. 1115, 127 S.Ct. 2934, 168 L.Ed.2d 265 (2007). The Supreme Court denied Appellee's petition for a writ of *certiorari* on June 11, 2007. *Id.*

On December 5, 2006, Appellee filed the instant PCRA petition, alleging after-discovered evidence. Attached to both petitions are the affidavits of Michael Toro and Hector Toro, wherein they recant their trial testimony. The PCRA court appointed counsel who filed an amended petition on November 10, 2008. A subsequent amended PCRA petition was filed on March 5, 2010. After conducting extensive evidentiary hearings, on August 2, 2011, the PCRA court entered an order granting Appellee's PCRA petition and ordered a new trial. On August 9, 2011, the Commonwealth filed a timely notice of appeal.[2]

On October 31, 2012, a divided panel of this Court affirmed the PCRA court's order granting Appellee a new trial. On November 13, 2012, the Commonwealth filed a timely petition for reargument *en banc*. On January 4, 2013, this Court entered an order granting the Commonwealth's petition and withdrawing the October 31, 2012 panel memorandum.

On appeal, the Commonwealth raises three issues for our review.

I. Was [Appellee]'s second PCRA petition untimely where he filed it more than one year after his judgments of sentence became final and failed to prove that his new evidence could not have been obtained previously with the exercise of reasonable diligence?

II. Did the [PCRA] court contravene precedent in finding a reasonable probability that a recantation by one of [Appellee]'s fellow inmates, who had provided only corroborative testimony at trial, would have changed the outcome of the trial?

III. Did the [PCRA] court err in deeming another, more central, witness incompetent to testify at the PCRA hearing where the evidence was grossly inadequate to overcome the presumption of competency?

Commonwealth's Brief at 3.

■■■ We begin by noting our well-settled standard of review. "On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Edmiston*, 65 A.3d 339, 345 (Pa.2013) (citation omitted). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 131 (2012) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." *Commonwealth v. Spotz*, 610 Pa. 17, 18 A.3d 244, 259 (2011) (citation

2. The Commonwealth and the PCRA court have complied with Pa.R.A.P. 1925.

omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Id.*

■■ Additionally, courts "will not entertain a second or subsequent request for PCRA relief unless the petitioner makes a strong *prima facie* showing that a miscarriage of justice may have occurred." *Commonwealth v. Marshall,* 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted). "Appellant makes a prima facie showing of entitlement to relief only if he demonstrates either that the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged." *Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582, 586 (1999)

■ The Commonwealth first avers that the PCRA court lacked jurisdiction to consider Appellee's second PCRA petition as it was untimely filed. We note the timeliness of a PCRA petition implicates the jurisdiction of this Court and the PCRA court. *Commonwealth v. Williams,* 35 A.3d 44, 52 (Pa.Super.2011) (citation omitted), *appeal denied,* 616 Pa. 467, 50 A.3d 121 (2012). "Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition." *Id.* The PCRA "confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar[.]" *Commonwealth v. Watts,* 611 Pa. 80, 23 A.3d 980, 983 (2011) (citation omitted). This is to "accord finality to the collateral review process." *Id.* "A petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition, set forth at 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii), is met." *Commonwealth v. Harris,* 972 A.2d 1196, 1199–1200 (Pa.Super.2009). The act provides, in relevant part, as follows.

**§ 9545. Jurisdiction and proceedings**

. . .

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

. . .

42 Pa.C.S.A. § 9545(b).

As noted above, Appellee was sentenced on November 5, 1993, and this Court affirmed his judgment of sentence on February 16, 2001. As Appellee did not file a petition for allowance of appeal with our Supreme Court, his judgment of sentence became final on March 19, 2001, when the filing period for such a petition expired.

*See* 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 1113(a). Appellee did not file the instant petition until December 5, 2006. As a result, it was untimely filed. However, Appellee argues that the newly-discovered fact exception applies in this case.[3]

■■■■■ Our Supreme Court has previously described a petitioner's burden under the newly-discovered fact exception as follows.

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) "the *facts* upon which the claim was predicated were *unknown*" and 2) "could not have been ascertained by the exercise of *due diligence.*" 42 Pa.C.S. § 9545(b)(1)(ii) (emphasis added).

*Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264, 1272 (2007). "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced." *Williams, supra* at 53. Additionally, as this Court has often explained, all of the time-bar exceptions are subject to a separate deadline.

> The statutory exceptions to the timeliness requirements of the PCRA are also subject to a separate time limitation and must be filed within sixty (60) days of the time the claim could first have been presented. *See* 42 Pa.C.S.A. § 9545(b)(2). The sixty (60) day time limit … runs from the date the petitioner first learned of the alleged after-discovered facts. A petitioner must explain when he first learned of the facts underlying his PCRA claims and show

that he brought his claim within sixty (60) days thereafter.

*Id.* (some citations omitted).

In this case, the Commonwealth avers that Appellee did not exercise due diligence and as a result cannot satisfy the requirement of the time-bar exception. Commonwealth's Brief at 23–26. In the Commonwealth's view, "[Appellee]'s complete failure to contact Hector during the fifteen-year period between his arrest for the murder of Mr. Bogan and the filing of his second PCRA petition occurred despite having every reason to question and investigate Hector." *Id.* at 24.

In support of its determination that Hector Toro's recantation testimony met the newly-discovered fact exception, and that Appellee filed his petition within 60 days of discovering this evidence, the PCRA court reasoned as follows.

> … [Appellee]'s credible testimony showed that he was not aware of the favorable evidence at his trial and he did not know that the prosecution was aware that it was using perjured testimony. [Appellee] had no way of knowing what the detective said to the Commonwealth's key child witnesses or that his threats were the reason the boys lied at trial. In addition, reasonable investigation could not have revealed it since even at the PCRA evidentiary hearing the Commonwealth's prosecutors claimed they had not known of the detective's conduct. If the Commonwealth's prosecutors did not know, [Appellee] and his counsel had no reason to look for this evidence and probably could not have found it if they had.
>
> Hector Toro's credible testimony showed that he first revealed these facts

3. Because we agree with the PCRA court that Appellee's PCRA petition meets the newly-discovered fact exception to the time-bar, we need not address his contention that it also meets the governmental interference exception.

to [Appellee] after October 18, 2006 when Hector Toro—then an adult—was transferred to Graterford Prison where [Appellee] was incarcerated, and that Hector [Toro] never previously disclosed the facts to anyone outside his family. [Appellee]'s credible testimony about the initial disclosure mirrors Hector [Toro's] account.

The Commonwealth presented no credible evidence to contradict Hector Toro and [Appellee]'s testimony on timing and confirmed that Hector Toro first arrived at Graterford on October 18, 2006. There was no evidence that both men had somehow met earlier or that Hector [Toro] had disclosed this information to [Appellee] or his family earlier. Any suggestions to that effect were not supported by evidence and are wholly unconvincing.

. . .

As previously mentioned, the credible evidence at the PCRA hearing showed [Appellee] had no information that a detective coerced and threatened the boys causing Hector [Toro] to lie until Hector [Toro] disclosed it at Graterford fourteen years after the trial. There was no evidence that Hector had recanted earlier or at the time of trial other than telling the unidentified detective that he had not seen anything incriminating. There was no evidence that, in the intervening years since trial, [Appellee] learned of the detective's coercion and threats or knew that Hector [Toro] told anyone about lying at trial. The mere fact that [Appellee] knew Hector [Toro] was falsely testifying to having seen him do something he had not done would not provide [Appellee] sufficient information as to why Hector [Toro] was lying. The detective's actions were kept secret from prosecutors, the defense team and the trial court.

. . .

Thus, [Appellee] has established that he did not know of the information at trial, could not have discovered it with reasonable diligence and only learned of it after trial.

. . .

[Appellee also] presented credible evidence that his petition was timely filed: Hector transferred to Graterford on October 18, 2006 and disclosed the information to [Appellee] who filed his petition within 60 days on December 5, 2006. The Commonwealth presented no credible evidence refuting these facts.

PCRA Court Opinion, 8/2/11, at 96, 127–128, 132–133 (footnotes and internal citations omitted).

In addition to the PCRA court's findings, we note that in *Commonwealth v. Loner*, 836 A.2d 125 (Pa.Super.2003) (*en banc*), *appeal denied*, 578 Pa. 699, 852 A.2d 311 (2004), this Court explicitly rejected the Commonwealth's argument that recantation testimony could have been discovered through the exercise of due diligence where a defendant was not present at the scene of the crime, and thus, had reason to believe a witness testifying to the contrary was lying. *Id.* at 137 n. 5. (stating, "we reject the Commonwealth's assertion that the victim's recantation in this case is not truly after-discovered evidence because [the a]ppellant knew prior to trial that the victim was not telling the truth[ ]"). We further note that Hector Toro testified consistently and unequivocally at trial that Appellee wielded a knife shortly before the murder and stated that he was going to kill someone. As such, it was highly unlikely that defense counsel, without any supporting factual basis, could have compelled Hector Toro to change his testimony during cross-examination, by engaging in a fishing expedition as to why Hector Toro was lying. Therefore, we conclude that Appellee could not have dis-

covered the source of Hector Toro's recantation, or the recantation itself, through the exercise of due diligence, and his second petition was filed timely under the after-discovered evidence exception. *See Commonwealth v. McCracken*, 540 Pa. 541, 659 A.2d 541, 545 (1995) (concluding that recantation testimony qualified as after-discovered evidence because the witness identified the defendant at the preliminary hearing and trial unequivocally, which "foreclosed the possibility that defense counsel could have persuaded [the witness] to change his statement concerning the identity of the perpetrator prior to the close of trial."); *Commonwealth v. Cobbs*, 759 A.2d 932, 934–35 (Pa.Super.2000) (concluding that variations in officers' identification testimony elicited during a civil case deposition after the criminal trial was completed satisfied the after-discovered exception because "it could not have been discovered prior to or at the trial.").

Based on the above considerations, we conclude PCRA court's thorough analysis, and its conclusions are supported by the record. Therefore, we further conclude the PCRA court correctly determined that Appellee's second PCRA petition met the newly-discovered fact exception to the time-bar, and was thus timely filed.

In its second issue, the Commonwealth avers that the PCRA court erred in granting Appellee a new trial based on after-discovered evidence. Our Supreme Court has previously explained a PCRA petitioner's burden to receive a new trial based on after-discovered evidence as follows.

> [The PCRA petitioner] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in

a different verdict if a new trial were granted.

*Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008), *cert. denied, Pagan v. Pennsylvania*, 555 U.S. 1198, 129 S.Ct. 1378, 173 L.Ed.2d 633 (2009); *accord Commonwealth v. Castro*, 55 A.3d 1242, 1246 (Pa.Super.2012) (en banc), *appeal granted*, 65 A.3d 291 (Pa.2013).

In this case, the Commonwealth only argues that Appellee could not satisfy the fourth prong. The Commonwealth avers that "Hector Toro's most recent version of events in which he claimed that he did not see [Appellee] with a knife and that he only testified to the contrary because of police pressure, constituted both a recantation and an admission of perjury." Commonwealth's Brief at 29. Therefore, in the Commonwealth's view, Hector Toro's recantation "was the least reliable form of evidence." *Id.* The Commonwealth also argues that Hector Toro's testimony "merely corroborated [Michael Toro's] eyewitness testimony by confirming that the boys had seen [Appellee] with a knife about an hour before the stabbing." *Id.* at 31.

In *Commonwealth v. Fiore*, 780 A.2d 704, 714 (Pa.Super.2001), *appeal granted*, 568 Pa. 715, 797 A.2d 910 (2002), *appeal dismissed*, 572 Pa. 568, 817 A.2d 1080 (2003), this Court analyzed whether the testimony of a witness who was unavailable to testify at the defendant's trial for Fifth Amendment reasons constituted after-discovered evidence that "would likely [have] result[ed] in a different verdict." *See Pagan, supra.* The unavailable witness later testified at the PCRA hearing that a conspiracy did not exist between the defendant, the unavailable witness, and his cohorts. We concluded that the testimony of the unavailable witness, if believed by a jury, would have changed the outcome of the trial, and thus, remanded for a new

trial. Our decision was based on the fact that the unavailable witness's testimony directly contradicted the testimony of the Commonwealth witnesses. The credibility of the unavailable witness needed to be assessed by a jury against the credibility of the Commonwealth's witnesses, whose testimony was impeached and contained inconsistencies. In these circumstances, we concluded that "a jury should be presented with the testimony of [the unavailable witness] to permit it to determine whether his version of the events is more credible than [that of the Commonwealth's witnesses]." *Id.* at 714.

 We also note that "an appellate court may not interfere with the [ ] granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion." *McCracken, supra.* Additionally, "[t]he deference normally due to the findings of the [PCRA] court is accentuated where what is involved is recantation testimony[.]" *Loner, supra* at 141 (some brackets in original). As such, it was within the exclusive province of the PCRA court to determine the credibility of Hector Toro's recantation. Finding no clear abuse of discretion on the part of the PCRA court in making its credibility determination, this Court is bound to accept it.

Furthermore, "the PCRA court as factfinder is in a superior position to make the initial assessment of the importance of [recantation] testimony to the outcome of the case." *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167, 1181 (1999). Instantly, the PCRA court ably detailed how Hector Toro's testimony would have most likely resulted in a different outcome.

> ... At [Appellee]'s trial, young Hector Toro's testimony was key; without it there was only very limited circumstantial evidence connecting [Appellee] to the murder and not a shred of forensic evidence that he killed William Bogan. This is true even if Michael [Toro's] testimony were included in the analysis. Hector [Toro's] testimony strongly undermines the veracity of Michael [Toro's] already weak testimony. A jury that knew a detective repeatedly pressured and threatened both young boys would not likely believe Michael [Toro's] already emotional and wavering testimony. [Appellee]'s defense that he was visiting the neighborhood from Reading to attend a friend's daughter's birthday combined with evidence of his good character would likely have led to an acquittal.

> At trial, 11-year-old Hector Toro was one of two child witnesses who gave testimony incriminating [Appellee]. This Court holds that if the jury knew Hector Toro did not see [Appellee] with a weapon or making threats, that he did not see him at all the night Bogan was killed, and that a detective threatened young Hector and Michael [Toro] to testify or be removed from their home, the jury would have given a different verdict.

> . . .

> [T]here was not a shred of forensic evidence whatsoever linking [Appellee] to the murder and to this day no murder weapon has ever been found. Clearly, without Hector Toro's perjured testimony, the remaining evidence against [Appellee] is [tenuous and weak.]

PCRA Court Opinion, 8/02/2011, at 140–141.

In the case *sub judice,* Hector Toro's recantation testimony is similar to the after-discovered evidence in *Fiore.* If credited by a jury, Hector Toro's testimony would be especially effective because it not only repudiates his own testimony implicating Appellee in the stabbing, but also directly contradicts Michael Toro's eyewit-

nesses account. Significantly, Michael Toro, the only eyewitness to the crime, has well-documented credibility issues, and during the original trial, he was effectively impeached and wavered in his responses, first testifying on direct examination that he saw the murder, then testifying on cross-examination that he did not see the murder. Hector Toro's testimony would serve to undermine further Michael Toro's credibility, if not completely render his testimony incredible.[4]

If the jury believed Hector Toro's testimony that he never observed Appellee with a knife and that Michael Toro lied when he testified that he saw the stabbing, the Commonwealth would be left with shaky circumstantial proof. Therefore, in order to convict Appellee, the Commonwealth would need the jury to believe a version of the testimony of either Hector Toro or Michael Toro, and the case, consequently, hinges entirely on which of these witnesses' previous statements (or current testimony in a retrial) a jury would find credible. As in *Fiore*, we believe that a jury should be presented with Hector Toro's testimony to permit it to determine whether his recantation is more credible than any statement he made in the past or that of Michael Toro. Because the PCRA court found Hector Toro's recantation testimony credible and Michael Toro's PCRA testimony incredible, the PCRA court did not abuse its discretion in concluding that there was a strong likelihood that a different verdict would be reached upon retrial.[5]

 In its third issue, the Commonwealth avers that the PCRA court erred in finding that Michael Toro was incompetent

to testify at the PCRA hearing. Commonwealth's Brief at 36. Although the PCRA court partially couched its analysis of Michael Toro's testimony at the PCRA hearing in terms of competency, the PCRA court also concluded in the alternative that Michael Toro's PCRA testimony was incredible. *See* PCRA Court Opinion, 8/2/11, at 115 (stating, "[f]urthermore, had Michael been found competent, the Commonwealth would have been hurt, rather than helped, by his testimony[ ]").

As the PCRA court noted, both Michael Toro's lack of memory at the PCRA hearing and his long history of contradictory statements resulted in the PCRA court's conclusion that Michael Toro was unreliable and could not be believed. *See* N.T., 7/20/10, at 254–321; N.T., 7/21/10, at 24 ("[Michael Toro's] testimony is so unreliable because it goes back and forth and back and forth...."); PCRA Court Opinion, 8/2/11, at 113 ("th[e PCRA c]ourt found that Michael [Toro's] constantly changing testimony, poor memory and limited understanding made his testimony so wholly unreliable that he was not qualified to testify relating to the murder.... Michael [Toro] swore under oath so many times, both in and out of court that he both saw and did not see the murder, that his testimony on this subject was not even remotely useful to the Court."); PCRA Court Supplemental Opinion, 11/22/11, at 26 (stating that "the repeated and complete contradictions by Michael Toro in his sworn statements on the simple question of whether or not he saw the murder gave the [PCRA c]ourt no reliable indication

---

4. In the case of a new trial, Michael Toro's credibility could be attacked on the additional ground that he signed a written affidavit recanting his trial testimony during the PCRA proceedings.

5. Because we agree with the PCRA court's determination that Appellee is entitled to a

new trial based on after-discovered evidence, we need not address the Commonwealth's arguments regarding its alleged violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See* Commonwealth's Brief at 27–28.

that he had personal knowledge about the events he was testifying about[ ]").

As we note above, credibility determinations are vested solely with the PCRA court. *See Williams, supra.* Therefore, we discern no error on the part of the PCRA court in effectively dismissing Michael Toro as an incredible and unreliable witness.

■■■ In its fourth issue, the Commonwealth contends that the PCRA court abused its discretion in denying its motion for recusal.[6] Commonwealth's Brief at 46–47. A review of the Commonwealth's brief indicates that most of its assertions are refuted by the record, and that the rest are dramatically exaggerated or are nothing more than an attempt to recast its previous arguments through the lens that the PCRA court unnecessarily favored Appellee. For example, the Commonwealth repeatedly points to the fact that in a previous, unrelated case, *Commonwealth v. Pena,* 31 A.3d 704 (Pa.Super.2011), the PCRA court judge who presided over the hearings in this case, was reversed by this Court for, *sua sponte,* finding a witness incompetent to testify. *Pena* is completely irrelevant to these proceedings.

Moreover, the Commonwealth asserts that the PCRA court judge, *sua sponte,* raised the issue of Michael Toro's testimonial competency; to the contrary, the PCRA court reminded PCRA counsel that the Third Circuit's decision in *Medina* severely questioned Michael Toro's competency, and it was PCRA counsel who later decided to challenge Michael Toro's ability to testify at the PCRA hearing. Additionally, as we have explained above, the PCRA court in the alternative found Michael Toro's PCRA testimony incredible.

The Commonwealth also contends that the PCRA court, *sua sponte,* raised the governmental interference exception to the PCRA time limitations; as explained above, a fair reading of the *pro se* petition and the memorandum of law attached to the amended petition indicates that Appellee was relying on the interference by a governmental official exception to the PCRA's time limitations. Finally, the rest of the Commonwealth's arguments focus on attacking the integrity of the PCRA court to adjudicate the matter in an impartial manner. In short, we conclude these arguments are baseless and unsubstantiated, and this Court will not address them further.

Based on the foregoing, we conclude the PCRA court properly granted Appellee's PCRA petition and ordered a new trial.[7] *See Edmiston, supra.* As the PCRA court concluded that·the interests of justice required this action, and for the reasons given above, we further agree that Appel-

6. We note that in its substituted brief on reargument, the Commonwealth omitted this claim from its statement of questions presented. *See* Pa.R.A.P. 2116(a) (stating, "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail[ ]"). Rule 2116 also states that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." *Id.* However, because the Commonwealth did raise this claim in its initial brief, Appellee has addressed this claim in its substituted brief on reargument, and it is otherwise preserved, we decline to find waiver on this basis.

7. On May 23, 2012, the Commonwealth filed a Motion to Correct Omission in the Record, averring that it "believed" that the certified record may be missing portions of the trial transcript, particularly the notes of testimony for the preliminary hearing, and requested that this Court order a supplemental record be transmitted. The certified record contains all the information that this Court needs to dispose of the Commonwealth's appeal. Accordingly, the Commonwealth's motion is denied.

lee did meet the "miscarriage of justice" standard for second PCRA petitions. *See* PCRA Court Opinion, 8/2/11, at 123, 216; *Marshall, supra; Allen, supra.* Accordingly, the PCRA court's August 2, 2011 order is affirmed.

Order affirmed. Motion to Correct Omission denied.

Judge GANTMAN files a Dissenting Opinion in which Judges PANELLA and SHOGAN join.

## DISSENTING OPINION BY GANTMAN, J.:

I respectfully disagree with the majority's conclusion that the PCRA court properly granted Appellee's PCRA petition and ordered a new trial. I would reverse the order granting Appellee a new trial because: (1) Appellee's petition fails to meet the timeliness exception for newly-discovered facts where he could have discovered Hector Toro's recantation earlier with the exercise of reasonable diligence; (2) assuming the petition could even be considered timely, other evidence supported Appellee's conviction and disqualifies his claim of a miscarriage of justice; (3) the PCRA court completely ignored whether a retrial after twenty years would prejudice the Commonwealth. Hence, I dissent.

On October 18, 1991, eleven-year-old Michael Toro and his ten-year-old brother, Hector, went to a Chinese restaurant to play video games. At the restaurant, the Toro brothers saw Appellee, a close family friend. Appellee showed a large knife to the brothers, stated he was drunk, and bragged that he was about to kill someone with the knife. Later that evening, the brothers returned to their home, which was near the Chinese restaurant. While inside, Michael Toro heard a commotion coming from the street. Michael Toro looked out a window and saw the victim, William Bogan. The victim said to Appellee, "I will pay you tomorrow." (N.T.

Trial, 11/5/92, at 105). Thereafter, Michael Toro saw Appellee stab the victim. Hector Toro did not see the stabbing, but he heard the commotion, exited the residence, and saw the victim's body in the street.

The Commonwealth charged Appellee with various offenses related to the victim's murder, and he proceeded to a jury trial in November 1992. At trial, Michael Toro testified that he saw Appellee brandish a knife at the Chinese restaurant; subsequently, Michael Toro saw Appellee stab the victim in the chest. Nevertheless, Michael Toro made inconsistent statements during his cross-examination, denying that he actually saw the stabbing. The Commonwealth also presented testimony from Hector Toro. Although Hector Toro did not see the stabbing, Hector confirmed he was present at the Chinese restaurant when Appellee brandished the knife and threatened to kill someone with it.

In addition to the testimony from the Toro brothers, the Commonwealth presented Maria Caraballo, a friend of the Toro family and Appellee's aunt. Ms. Caraballo lived a few houses down from the Toro brother's residence. On the night of the murder, Ms. Caraballo was sitting on her front steps when she heard a commotion, looked up, and saw the victim running down the block, holding his chest. Ms. Caraballo followed the victim to offer assistance, but she did not catch up with him. Upon returning to her home, Ms. Caraballo saw Appellee looking underneath a parked car. An unidentified woman was grabbing at Appellee's arms. Appellee freed himself from the woman's grasp and left the area. Around the same time, another neighbor informed Ms. Caraballo about the victim's death. Ms. Caraballo went to the scene and identified the victim as the man who had run past her earlier that evening.

At the conclusion of trial, the jury convicted Appellee of first degree murder and related offenses. On direct appeal, Appellee claimed trial counsel was ineffective for failing to seek a pretrial determination of the Toro brothers' competency to testify and for failing to object to their competency during trial. Following a remand, this Court affirmed the judgment of sentence on February 16, 2001, concluding trial counsel "was not lacking in a reasonable basis designed to further [Appellee's] interest." *Commonwealth v. Medina*, No. 3132 EDA 1999, unpublished memorandum at 3 (Pa.Super. filed February 16, 2001). Appellee did not seek further review with our Supreme Court. Appellee timely filed his first PCRA petition on December 11, 2001, raising additional ineffectiveness claims. The PCRA court denied relief, this Court affirmed the order, and our Supreme Court denied Appellee's petition for allowance of appeal. Thereafter, Appellee litigated an unsuccessful petition for a writ of *habeas corpus* in the federal courts.

Appellee filed the current *pro se* PCRA petition on December 5, 2006, claiming "Newly Discovered Evidence." (PCRA Petition, filed 12/5/06, at 2). The petition included a typed, notarized affidavit signed by Hector Toro and dated October 25, 2006. In the affidavit, Hector Toro maintained that he and Michael Toro did not see Appellee at the Chinese restaurant on the night of the murder. Further, Hector

Toro asserted that the police coerced him, and Michael Toro, into testifying against Appellee by threatening to remove the brothers from their grandmother's custody. In response to Appellee's *pro se* petition, the PCRA court appointed counsel, who filed an amended petition on November 10, 2008. On June 29, 2009, the court removed prior counsel and appointed current counsel. Current counsel filed another amended PCRA petition on Appellee's behalf on March 5, 2010.

The PCRA court conducted multiple evidentiary hearings on the matter, at which time Hector Toro continued to disavow his trial testimony and accuse the police of coercion. On cross-examination, Hector Toro confirmed that he told no one about his purportedly false testimony until 2006, when he was incarcerated on the same cellblock as Appellee. The Commonwealth also attempted to impeach Hector Toro with a statement he gave to police in 2009, in which he explained he had recanted only "to survive in jail." (N.T. PCRA Hearing, 7/20/10, at 207). Following the evidentiary hearings, on August 2, 2011, the court granted Appellee a new trial.

As an initial matter, I think Appellee could have discovered sooner, with the exercise of reasonable diligence over the last two decades, the facts he claims now warrant relief.[1] Appellee was present at trial. His case was painstakingly reviewed in both the state and federal system, and the

---

1. The cases the majority relies on to support its conclusion on timeliness and reasonable diligence are unavailing. *Loner* involved a first and timely filed PCRA petition, where the court rejected the defendant's claim for collateral relief based on after-discovered facts. The *Loner* Court's remark about recantation evidence was immaterial to its holding and addressed the limited issue of whether "recantation evidence" could qualify as "after-discovered facts." *Loner* did not address the issues before us—timeliness and reasonable diligence. *McCracken* is inapposite because

the trial identification was "unequivocal." Here, Hector Toro did not see the stabbing, Michael Toro equivocated in his identification of Appellee as the murderer, and defense counsel had the opportunity to exploit the equivocation. *Cobbs* is distinguishable because the after-discovered facts in that case came in the form of identification testimony made by police officers in a later civil trial that significantly differed from the identification testimony the officers had given at the defendant's criminal trial.

Toro brothers' trial testimony has been a central issue throughout that review process. I must question why Appellee or his counsel only recently uncovered the alleged facts about Hector Toro's 1992 trial testimony, given those portions of Hector Toro's PCRA testimony where he stated he had wanted to set the record straight and clear Appellee's name for some time. An earlier interview of Hector Toro would have produced these latest revelations and recantation. In my opinion, Appellee's lack of due diligence in this regard bars assertion of the recent recantation as newly-discovered facts. *See Commonwealth v. Padillas,* 997 A.2d 356 (Pa.Super.2010), *appeal denied,* 609 Pa. 687, 14 A.3d 826 (2010) (discussing due diligence element of newly discovered fact exception). *See also Commonwealth v. Lambert,* 57 A.3d 645 (Pa.Super.2012), *appeal denied,* 620 Pa. 697, 67 A.3d 795 (2013) (explaining focus of Section 9545(b)(1)(ii) is on newly discovered facts, not on newly willing source for previously known facts).

Without accepting the strained conclusion that Appellee's petition met the statutory exception, I also disagree with the majority's analysis of the merits. Because this is Appellee's second petition for post-conviction relief, he had to meet the more stringent "miscarriage of justice" standard. *See Commonwealth v. Hawkins,* 598 Pa. 85, 953 A.2d 1248 (2006). He cannot do so.

Hector Toro's recantation does not overshadow or make other evidence disappear. It serves only to impeach his original trial testimony.[2] Even if Hector Toro had testified at the 1992 trial consistently with the testimony he gave at the PCRA hearing, other circumstantial evidence remained to support the guilty verdict at Appellee's trial. Michael Toro testified at trial that he had heard a man scream, "I will pay you tomorrow," and then saw Appellee stab the victim in the chest. Ms. Caraballo placed Appellee at the scene of the crime in close proximity to the victim. Appellee appeared angry, and Ms. Caraballo watched Appellee push away a woman who attempted to calm him down. Initial police reports of the suspect described a man in a white sweatshirt with a knife. Responding officers found Appellee a few blocks from the scene in a white sweatshirt with money crumpled in his hand. These facts presented a circumstantial case of Appellee's guilt.

Significantly, Hector Toro's recantation at the PCRA hearing was highly suspect, given the circumstances under which it was first made. Its reliability is further weakened because Hector Toro switched positions at least twice after crossing paths with Appellee in prison. When police visited Hector Toro at his mother's house after his release from prison, he signed a statement recanting his recantation and informed the officers he had changed his trial story to survive in prison. Hector Toro then appeared for the PCRA hearing, switched his story yet again, and denied telling police officers that his original trial testimony was truthful. In accepting the entirety of Hector Toro's PCRA hearing recantation, the PCRA court reviewed that testimony without the appropriate scrutiny. *See Commonwealth v. Henry,* 550 Pa.

---

2. In this regard, I disagree with the majority's reliance on *Fiore,* which addressed recantation testimony from a co-conspirator in a conspiracy prosecution, where the co-conspirator was unavailable at trial (because he had asserted his Fifth Amendment privilege). The co-conspirator later testified at the PCRA hearing that there was no conspiracy. Here, Hector Toro was available at trial and identified Appellee. His PCRA recantation testimony involves an admission of perjury and does not cast the same doubt on Appellee's involvement in the murder, as in *Fiore.* Furthermore, at least two other witnesses placed Appellee at the scene of the crime.

346, 706 A.2d 313 (1997) (stating recantation is extremely unreliable and recantation involving admission of perjury is least reliable form of proof).

Moreover, the PCRA court incorrectly read the federal court's decision to deny Appellee *habeas* relief as holding Michael Toro was incompetent to testify at trial. *See Medina v. Diguglielmo*, 461 F.3d 417 (3rd Cir.2006), *cert. denied*, 551 U.S. 1115, 127 S.Ct. 2934, 168 L.Ed.2d 265 (2007). The Third Circuit reasoned trial counsel was deficient for failing to challenge Michael Toro's competency but ultimately concluded counsel's error was not prejudicial and warranted no relief. That conclusion deals with the more limited issue of counsel's representation and is distinct from a finding of testimonial incompetency. Whatever the PCRA court's concerns about counsel's failure to challenge Michael Toro's competency to testify at trial, the PCRA court did not have the authority to decide the issue retroactively and declare that Michael Toro was incompetent to testify at trial back in 1992. Additionally, the PCRA court was not in the position to decide if the trial testimony of Michael or Hector Toro was credible. That job belonged to the jury. *See Commonwealth v. Spotz*, — Pa. ——, 84 A.3d 294 (2014) (explaining PCRA court's fact-finding authority is entitled to great deference, but deference does not extend so far as to permit PCRA court to base its decision on speculation derived from testimony it finds credible; Superior Court properly rejected PCRA court's theory that trial counsel purposefully planted error to create appellate issue in event of conviction; although Superior Court was required to defer to PCRA court's credibility determinations, objective assessment of record did not support PCRA court's theory of intentional, nefarious strategy by counsel to create error; nevertheless, Superior Court did not utilize correct standard in concluding appellee suffered prejudice due to counsel's failure to object to prosecutor's references to post-arrest silence; even if counsel objected to challenged portions of prosecutor's cross-examination, overall effect on trial would have been minimal; Superior Court erred in concluding appellee satisfied burden of proving counsel's omission had actual adverse effect on outcome of proceedings such that new trial was warranted). Given Michael Toro's trial testimony and the other circumstantial evidence against Appellee, Appellee has failed to show a miscarriage of justice. *See Hawkins, supra.*

The fact that the PCRA court was "dissatisfied" with the way Appellee's trial was conducted is not pertinent. The PCRA court's opinion is replete with concerns that the trial evidence was "weak" and that there was "something amiss" about the Toro brothers' trial testimony. The PCRA court sought to correct what it perceived as errors in prior decisions from this Court and the Third Circuit. It is not the function of the PCRA court to disturb the jury's credibility determinations, then piece together statements out of context from a variety of state and federal decisions and "implement" what it believes should have happened at trial. I think the PCRA court overstepped its authority in taking these astonishing steps to achieve its desired result. *See Commonwealth v. Rivers*, 567 Pa. 239, 786 A.2d 923 (2001) (discussing how PCRA claims are not merely direct appeal claims made at later stage of proceedings but must involve extraordinary breakdown in system).

Additionally, I am troubled by the PCRA court's apparent willingness to presume police corruption, based on vague testimony from Hector Toro. Reasonable police encouragement to obtain a true version of the events from a reluctant witness is not necessarily or automatically nefarious police coercion. The PCRA court was

entirely misguided in its concern that impermissible police interrogation of the Toro brothers led to coercion and *Brady* violations. First, the Toro brothers were not suspects in the murder and, therefore, were not "interrogated." *See Commonwealth v. Gonzalez,* 979 A.2d 879, 889 (Pa.Super.2009) (defining interrogation as police conduct reasonably likely to elicit incriminating response). Second, their parents were unavailable to accompany Michael and Hector Toro to police headquarters because their parents were incarcerated. There was nothing improper about having Ms. Caraballo—a family neighbor and friend who knew the Toro brothers—stand in place of the parents.

Finally, I emphasize my position that Appellee could have discovered sooner, with the exercise of reasonable diligence over the last two decades, the facts he now claims warrant relief. Given such lack of due diligence, I think the PCRA court should have also considered whether a re-trial would prejudice the Commonwealth. *See* 42 Pa.C.S.A. § 9543(b) (stating even if petitioner has met eligibility requirements, petition shall be dismissed if it appears that, because of delay in filing petition, Commonwealth has been prejudiced in its ability to respond to petition or re-try petitioner). Our Supreme Court recently emphasized how substantial delay in seeking postconviction relief can prejudice the Commonwealth. *See Commonwealth v. Renchenski,* 616 Pa. 608, 52 A.3d 251 (2012) (holding Section 9543(b) applies to delays in filing of original or amended PCRA petitions; observing that, in certain instances of substantial delay, prejudice suffered by Commonwealth, as demonstrated at evidentiary hearing, justifies dismissal of original or amended petition). The interest in the finality of judgments is particularly significant in this case where

Appellee's attempts to obtain direct and collateral relief from his judgment of sentence have traveled through both state and federal courts for nearly two decades without success.

Appellee was entitled to a fair trial, not a perfect one. Decisions from this Court and a federal appeals court have already concluded that he received a fair trial. In my opinion, Hector Toro's PCRA hearing recantation does not call that original verdict into question. For these reasons, I respectfully dissent.[3]

---

**3.** I offer no analysis of the Commonwealth's request for recusal at this time. (*See* Substituted Brief for the Commonwealth on *En Banc* Reargument at 46–52.)