J-S26009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FATIH D. ANDERSON | : | |
| | : | |
| Appellant | : | No. 2238 EDA 2022 |

Appeal from the PCRA Order Entered August 8, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000555-2009

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FATIH D. ANDERSON | : | |
| | : | |
| Appellant | : | No. 2239 EDA 2022 |

Appeal from the PCRA Order Entered August 8, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000583-2009

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FATIH D. ANDERSON | : | |
| | : | |
| Appellant | : | No. 2240 EDA 2022 |

Appeal from the PCRA Order Entered August 8, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0006945-2009

BEFORE: STABILE, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 28, 2023**

Appellant, Fatih Anderson, appeals from the August 8, 2022 orders dismissing her petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. We affirm.

The record reflects that Appellant was convicted of the murders of James McClain, Donte Leak, and Stephen Gates. These murders were in apparent revenge for the murder of Appellant's friend, Reginald Ford. All four murders arose from ongoing conflict between rival gangs. Appellant's cases were consolidated for trial. On February 17, 2012, the trial court, sitting as fact finder, found Appellant guilty of three counts of first-degree murder, three counts of robbery, and related offenses. Appellant is currently serving three concurrent life sentences along with concurrent sentences for the other offenses. This Court affirmed the judgments of sentence on February 26, 2014. The Pennsylvania Supreme Court denied allowance of appeal on August 25, 2014, and the United States Supreme Court denied *certiorari* on March 23, 2015.

Appellant filed a timely first PCRA petition on July 15, 2015. The PCRA court dismissed that petition on January 5, 2017, this Court affirmed the dismissal on January 26, 2018, and our Supreme Court denied allowance of appeal on September 3, 2018.

Appellant filed a *pro se* second PCRA petition on January 31, 2018, alleging the recantation of trial witness Michael Green. The underlying

criminal bench trials were consolidated based on Green's testimony that Appellant confessed to him that she murdered McClain, Leak, and Gates. The PCRA court dismissed the second petition because Appellant's appeal from the dismissal of his first petition was still pending.

On September 11, 2018, after the Supreme Court denied allowance of appeal from the denial of Appellant's first PCRA petition, Appellant filed the instant one. Once again, he alleged the recantation of Michael Green. On February 3, 2020, Appellant, through appointed counsel, filed an amended petition alleging newly discovered facts in the form of a statement from David Satchell, who claimed he was an eyewitness to the murder of Stephen Gates and that the perpetrator was Ollie Glover, a/k/a Stick Up. Appellant filed another amended petition on June 5, 2020, alleging newly discovered facts in the form of statements from Stefon Palmer and Haashim Khalid, both of whom made statements similar to that of Satchell.

The PCRA court conducted a hearing on May 23 and 24, 2022. Appellant withdrew the claims arising from the alleged recantation of Michael Green, as Appellant was unable to locate Green after his release from prison. N.T. 5/23/22, at 9. The hearing proceeded with testimony from Crystal Anderson (Appellant's mother), Satchell, Palmer, and Khalid. The PCRA court dismissed Appellant's petition on August 8, 2022. This timely appeal followed.

The PCRA court summarized the hearing testimony in its Pa.R.A.P. 1925(a) opinion:

- 3 -

Crystal Anderson, [Appellant's] mother, testified that she received a letter from David Satchell on October 14, 2019, wherein Satchell claimed to be an eyewitness to the murder of [Gates]. Ms. Anderson turned the letter over to [Appellant's] attorney. She admitted to speaking to Satchell before he wrote the letter but did not elaborate on what they discussed. She testified that Satchell grew up with [Appellant].

David Satchell testified that he wrote a letter to [Appellant's] mother, Crystal Anderson, on October 14, 2019. In the letter Satchell stated he came across [Appellant's] case while researching his case and didn't know that [Appellant] had been convicted for killing Gates. Satchell testified that he was an eyewitness to the Gates murder and knew it wasn't [Appellant] and sent the letter because he wanted to help. Satchell has been friends with [Appellant] since 2003-2004. Satchell also sent an affidavit to [Appellant's] attorney stating what he observed the night of the murder which is summarized as follows:

On September 20, 2007, I was on 17th Street visiting a female friend by the name of Zakia Clark. I was talking to a few friends on the corner of 17th and Cumberland when I saw Ollie Glover a/k/a 'Stick Up' and an unknown male walk past. The two males turned onto 17th Street and people began running off 17th Street onto Cumberland. I heard shots fired and everyone laid on the ground. When the shots ended, 'Stick Up' and the unknown male ran off 17th Street. Both were carrying guns in their hand. The unknown male put his in his pocket. Everyone ran to 17th Street and saw Little Steve laying on the ground.

At the PCRA hearing Satchell testified that he first saw the faces of the shooters and recognized one as 'Stick Up' as they fled after the shooting. This contradicts the statement in his affidavit.

On cross examination, Satchell stated that he knew the other two newly discovered witnesses, Stefon Palmer and Haashim Khalid, but he did not see them in the area during the incident. Satchell also knew Julius Roberts, who testified at trial to witnessing the murder of [Gates, Roberts' cousin], but Satchell did not see Roberts on the scene either. Most importantly, emails between Satchell and [Appellant], sent via third parties, were introduced at the hearing which tended to prove that Satchell and [Appellant] were involved in a quid pro quo deal regarding their PCRA hearings. Each happened to have a common witness— Derrick Williams—who later attempted to recant on both cases.

- 4 -

[…] Contrary to the testimony of both [Appellant] and Satchell, claiming that Satchell did not communicate with [Appellant] or come forward until October of 2019, some of the emails were from March of 2019.[1]

Haashim Khalid testified that he was an eyewitness to the murder of [Gates] on September 20, 2007, and he provided an affidavit regarding the incident in 2020. Khalid and [Appellant] were friends from the neighborhood since 2003.

At the time of the murder, Khalid was with his friend, Stefon Palmer, at a Chinese store located at the corner of West Cumberland Street and North Chadwick Street. While inside, Khalid heard gunshots. After they ended, he looked out of the store and saw two males run past him, coming from 17th Street. Khalid recognized one of the males as 'Stick Up' (Ollie Glover), but he could not identify the other male, because he had a hoodie pulled down in the face area. He observed 'Stick Up' put a gun in his hoodie pocket, then both males jumped into an old gray town car on Chadwick Street and left the area.

Khalid first informed [Appellant] that he was an eyewitness to [Gates'] murder in 2018, when he and a friend, Loc, visited [Appellant] in jail. He did not come forward sooner because he did not want to be involved. Khalid had a change of heart when he went to the prison to see [Appellant], after [Appellant's] brother was murdered, to pay his condolences, and he discovered that [Appellant] was in jail for this murder. On cross examination, Khalid acknowledged that he knew that 'Stick Up' was murdered on October 30, 2007. He also stated that he knew David Satchell from the neighborhood and attended school with him, but he did not see Satchell in the area at the time of the murder.

Stefon Palmer testified that he was also an eyewitness to the murder of [Gates]. He was with Khalid in the Chinese store. Palmer provided an affidavit regarding the incident on May 3, 2020, at the behest of his friend, Khalid. Palmer has been friends

---

[1] The PCRA court found Appellant's petition not timely as to Satchell. Appellant does not challenge that finding on appeal. Satchell's hearing testimony is relevant to the PCRA court's explanation of its finding that Satchell, Khalid, and Palmer lacked credibility.

with [Appellant] for about 15 to 20 years, and they lived in the same neighborhood.

Palmer and Khalid were at the store on the corner of Chadwick Street when the heard multiple gunshots coming from the corner. Palmer looked out of the door when the coast was clear and saw 'Stick Up' running from the corner while putting a gun in his waist. 'Stick Up' then jumped into a car. On cross examination, Palmer stated that he did not see anyone with 'Stick Up' as he ran by and jumped in the car. Further, Palmer did not see any other people around the area when this happened.

[Appellant] testified that he did not discover that Khalid was an eyewitness to the murder of [Gates] until November of 2017, during a prison visit from Khalid, Loc, and a female friend, Abrea Williams. At that time, Khalid was hesitant to cooperate, but told [Appellant] to send a private investigator and he would talk to him. [Appellant] also testified that he was unaware that Satchell was a witness until November of 2019, when his mother received a letter from Satchell.

PCRA Court Opinion, 11/4/22, at 3-6 (record citations omitted).

The PCRA court found that the petition was timely, but concluded the petition failed on the merits because Appellant's new witnesses lacked credibility and therefore their testimony would not have altered the outcome of trial. Appellant argues that the PCRA court erred in this regard.

On review, we must determine whether the record supports the PCRA court's findings of fact, and whether its conclusions of law were in error. *Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa. Super. 2014) (*en banc*). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Id.* "The PCRA court's credibility

determinations, when supported by the record, are binding on this Court." *Id.* We review the PCRA court's legal conclusions *de novo.* *Id.*

We begin with an analysis of the PCRA court's jurisdictional timeliness provisions. Any PCRA petition, including a second or subsequent petition, must be filed within one year of the date on which the judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). Failing that, the petitioner must prove the applicability of one of the PCRA's timeliness exceptions, one of which is that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii). Appellant relies on this subsection, acknowledging that his petition is otherwise untimely. "To qualify for an exception to the PCRA's time limitations under subsection 9545(b)(1)(ii), a petitioner need only establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence." *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017).

In this case, Appellant testified that he first had a conversation with Khalid about his knowledge of the Gates murder "towards the end of November of 2017." N.T. Hearing, 5/23/22, at 82. The PCRA court accepted testimony that Appellant and Khalid, who were childhood friends, had not spoken for many years prior. And while the petition filed on September 11, 2018 pertained to a different witness, the fact remains that Appellant's petition

was pending within one year of his conversation with Khalid. Thus, the record supports the PCRA court's finding that this petition was timely. We therefore proceed to the merits.

Under § 9543(a)(2)(vi), a petitioner is eligible for relief if he pleads and proves by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). A petitioner satisfies this subsection by proving that "(1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Burton*, 158 A.3d at 629.

The PCRA court found the first three elements satisfied. The Commonwealth concedes as much. The PCRA court found that Appellant failed to establish the fourth element, and we agree. The PCRA court found Satchell not credible. The court wrote that the "evidence proved that [Appellant] and Satchell were in communication and cahoots with each other regarding their common goal of getting out from under their convictions." PCRA Court Opinion, 11/4/22, at 7. As explained above, the Commonwealth produced email communications showing that Satchell and Appellant had a plan to help each other in their efforts to get their convictions overturned. Further, the

PCRA court found that Appellant failed to exercise due diligence in procuring Satchell as a witness, as Appellant and Satchell "were lifelong friends and cohorts and were proven to be in communication when both testified that they weren't[.]" *Id.* These facts support the PCRA court's rejection of Satchell's credibility.

Regarding Khalid and Palmer, the PCRA court noted that neither claimed to have seen the shooting take place. Rather, they claimed they saw Ollie Glover a/k/a Stick Up running from the area of the shooting shortly after they heard gunshots. Khalid said Glover ran from the scene with another individual. Palmer said Glover fled from the scene alone. Both men said Glover had a gun. At trial, the Commonwealth produced the testimony of Julius Roberts, an eyewitness who saw Appellant and another person aim their guns at Gates and fire a combined twelve to fourteen shots. Roberts also testified that Appellant, knowing Roberts was a witness, attempted to intimidate him prior to trial. *Id.* at 8-9.

Based on these facts, the PCRA judge, who also presided as fact finder over the underlying criminal trials, found as follows:

> One of the facts that really stands out the most between the testimony of Mr. Khalid and Mr. Palmer is that – well, one, neither of them saw David Satchell out there, even though David Satchell says he was right there. Satchell says he never saw Khalid or Palmer out there. But the biggest discrepancy between the testimony of Khalid and Palmer, Khalid testified that he saw two persons, one of whom you can clearly identify as Stick Up. […] But that conflicted with Palmer who clearly testified that he only saw one person and that person was Stick Up. That person was alone. Big discrepancy in the testimony.

- 9 -

As far as – it is also interesting to note that there was testimony during the course of the trial that the second person with [Appellant] during the Gates murder was Stick Up.

[…]

Therefore, this being a waiver trial especially, this court watched everything, heard everything, saw. I remember this case quite clearly because of the level of witness intimidation involved in this case. This court does not find that there would be a different result, because this court finds these witnesses completely and utterly incredible.

N.T. PCRA Hearing, 5/24/22, at 70-71, 74.

The record supports the PCRA court's findings. Appellant's witnesses came forward long after the fact, and the person they implicated as the perpetrator, Glover, is long dead, having been murdered prior to Appellant's trial. Satchell and Appellant were demonstrably scheming to manufacture evidence to help each other obtain collateral relief. Khalid and Palmer were childhood friends of Appellant, and the trial court questioned their motives for waiting so long to come forward. Glover could not have retaliated, and Khalid and Palmer came forward only after Appellant and Satchell had hatched a scheme to help each other obtain collateral relief. Moreover, there were discrepancies between and among Appellant's PCRA witnesses as to who was at the scene and who, if anyone, was with Glover. As noted above, the PCRA court's credibility findings, when supported by the record, are binding on this Court. *Medina*, 92 A.3d at 1214. We discern no error in the PCRA court's

findings. Because Appellant produced no credible evidence that could have altered the outcome of his trial, we discern no error.[2]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/28/2023

_____

[2] Alternately, it appears that the best-case scenario for Appellant was to establish that Glover was a perpetrator of the Gates murder. The evidence at trial was that there were two shooters, Appellant and possibly Glover. In this scenario, Satchell, Khalid, and Palmer would be new sources for a fact previously known to Appellant, and his petition would be untimely. *See Commonwealth v. Chmiel*, 173 A.3d 617, 625 (Pa. 2017) (noting that facts previously known to the petitioner but presented through a new source do not make out the factual predicate for § 9545(b)(1)(ii)). Further, a finding that Glover was the second shooter would not compel a different verdict as to Appellant.