J-S49023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TREMAR JONES, | |
| Appellant | No. 3078 EDA 2013 |

Appeal from the PCRA Order October 4, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002910-2007

BEFORE:  OLSON, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 17, 2014**

Tremar Jones appeals from the order entered October 4, 2013, denying him relief, without a hearing, on his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*.  In this appeal, Jones argues the PCRA court erred in dismissing his petition without a hearing. Accordingly, he seeks a remand to give him the opportunity to present evidence supporting his claim of ineffective assistance of counsel.  Following a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm on the basis of the PCRA court's opinion.

Our standard of review for the denial of a PCRA petition is well settled.

> "On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Edmiston**, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in

the light most favorable to the prevailing party at the PCRA court level." **Commonwealth v. Koehler**, 614 Pa. 159, 36 A.3d 121, 131 (2012) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." **Commonwealth v. Spotz**, 610 Pa. 17, 18 A.3d 244, 259 (2011) (citation omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Id.**

**Commonwealth v. Medina**, 92 A.3d 1210, 1214-15 (Pa. Super. 2014).

Additionally,

[T]he right to an evidentiary hearing on a post-conviction petition is not absolute. **Commonwealth v. Jordan**, 772 A.2d 1011, 1014 (Pa. Super. 2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. **Id**.

**Commonwealth v. Wah**, 42 A.3d 335, 338 (Pa. Super. 2012).

Jones raised two claims in his Pa.R.A.P. 1925(b) statement of matters complained of on appeal. They are:

Appellate counsel was ineffective for failing to claim that this Court erred by denying trial counsel's motion for a mistrial after inadmissible hearsay was elicited from Amir Sanchez (Sanchez). Petitioner contends that this Court should have granted an evidentiary hearing pursuant to Pa.R.Crim.P. 908 (908 Hearing).

PCRA Opinion, 2/10/2014, at 3.

The PCRA court then cogently detailed why Jones was not entitled to relief as a matter of law regarding his claim of ineffective assistance of counsel and the underlying evidentiary issue. That analysis clearly demonstrates that there are no issues of fact to be resolved and that the claim is without support. Therefore, the PCRA court properly dismissed the petition without first conducting an evidentiary hearing.

The parties are directed to attached a copy of the PCRA courts opinion of February 10, 2010, in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2014

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

COMMONWEALTH                          :

                                      :          CP-51-CR-0002910-2007

              v.                      :          Superior Court No.:
                                      :          3078 EDA 2013

TREMAR JONES                          :

                                      :          **FILED**

Sarmina, J.
February 10, 2014                                FEB 1 0 2014

                         OPINION                 Criminal Appeals Unit
                                                 First Judicial District of PA

## PROCEDURAL HISTORY

On June 30, 2008, following a jury trial[1] before this Court, Tremar Jones (hereafter,

petitioner) was convicted of murder of the third degree (F-1), firearms not to be carried without a

license (F-3), and possessing instruments of crime (PIC) (M-1).[2] Sentencing was deferred until

September 29, 2008, on which date this Court sentenced petitioner to an aggregate term of not less

than 13 years nor more than 27 years confinement, to be followed by 23 years of probation.[3]

On October 2, 2008, petitioner filed post-sentence motions, which this Court denied on

January 30, 2009. On February 2, 2009, petitioner filed a timely notice of appeal. On February 16,

2010, the Superior Court affirmed petitioner's judgments of sentence.[4] On March 16, 2010,

---

[1] Petitioner was represented at trial by Daniel Greene, Esquire.

[2] 18 Pa.C.S. §§ 2502(c), 6106(a), and 907(a), respectively.

[3] As to the conviction for murder of the third degree, petitioner was sentenced to a term of not less than 12 years nor more than 25 years confinement, to be followed by 15 years of probation. As to the conviction for firearms not to be carried without a license, this Court sentenced petitioner to a consecutive term of not less than one year nor more than two years confinement, to be followed by five years of probation. As to the conviction for PIC, this Court sentenced petitioner to a consecutive term of three years of probation.

[4] Commonwealth v. Jones, No. 375 EDA 2009, slip op. (Pa.Super., Feb. 16, 2010) (memorandum opinion).

# APPENDIX
## LOWER COURT OPINION

petitioner filed a petition for allowance of appeal, which was denied by our Supreme Court on August 12, 2010.[5]

On September 19, 2011, petitioner filed a timely *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA).[6] Counsel was appointed[7] and, on March 18, 2013, filed an amended petition on petitioner's behalf. The Commonwealth responded on July 8, 2013 with a motion to dismiss. After considering the pleadings of the parties and conducting an independent review, this Court found that both of petitioner's claims lacked merit. On August 29, 2013, this Court sent petitioner notice of its intent to deny his petition without a hearing pursuant to Pa.R.Crim.P. 907 (907 Notice); on October 4, 2013, this Court denied and dismissed petitioner's petition. Petitioner filed a timely notice of appeal.

## FACTS[8]

> Petitioner shot and killed Bahir Roberts (Roberts) on November 16, 2006. Notes of Testimony (N.T.) 6/25/2008 at 86-88. Petitioner and Roberts were friends from the same neighborhood in West Philadelphia. N.T. 6/26/2008 at 114-15. But prior to the day of the shooting, two incidents had created a conflict between the young men. Id. at 214-17. The first incident, which had occurred in 2005, concerned some items stolen from a vehicle that belonged to petitioner's friend. Id. at 216-17. Though petitioner had no proof of who stole the items, he suspected Roberts. Id. at 217. The second incident, which had occurred on November 14, 2006, less than forty-eight hours before the shooting, concerned a drug transaction. Id. at 214-15. On that day, petitioner had given Roberts several tablets of Xanax, but after taking them, the victim was dissatisfied with the quality of the drugs. Id.
>
> Shortly before midnight on November 15, 2006, at or near the 5300 block of Hazelhurst Street in Philadelphia, petitioner, Roberts, and several mutual acquaintances were talking on the sidewalk. N.T. 6/26/2008 at 211. Petitioner was carrying a small bag of marijuana and a

---

[5] Commonwealth v. Jones, No. 106 EAL 2010, slip op. (Pa., Aug. 12, 2010) (memorandum opinion).

[6] 42 Pa.C.S. §§ 9541-9546.

[7] Originally, J. Scott O'Keefe, Esquire, had been appointed to represent petitioner on collateral attack. However, in June 2012, Mr. O'Keefe became a judge in Philadelphia's Municipal Court; he withdrew from this case and David Rudenstein, Esquire was appointed in his stead.

[8] This Court recites the facts as presented in its May 20, 2009 opinion pursuant to Pa.R.A.P. 1925(a).

TEC-9 semi-automatic pistol.[9] Id. at 263-65. At some point, Roberts asked petitioner if he had any marijuana. Id. at 213. Petitioner passed a small bag of marijuana to Roberts who smelled it and said, "It's me," meaning that he would be keeping the bag without paying for it. Id. at 213-14. Petitioner demanded payment for the bag and Roberts refused, but returned the bag to petitioner. Id.

Petitioner and Roberts then addressed the two prior incidents referenced above. Id. at 214-16. Roberts mentioned the incident from the previous day involving the Xanax and expressed his displeasure with the quality of the drugs. N.T. 6/26/2008 at 214-15. Petitioner mentioned the incident from 2005 in which his friend's car was broken into, and accused Roberts of committing that crime. Id. at 216-17.

Petitioner started walking in one direction when Roberts got on his bicycle and began riding away in the opposite direction. Id. at 220-22. Roberts then turned and began riding back towards petitioner. Id. at 223. Petitioner called out, warning Roberts not to come any closer. Id. Roberts continued; petitioner drew his TEC-9 and fired. Id. at 223. After firing, petitioner left the scene and threw his weapon in a sewer drain. N.T. 6/26/2008 at 227.

Emergency responders arrived at the scene and took Roberts to The Hospital of the University of Pennsylvania, where he was pronounced dead from a gunshot wound to the chest at 12:11 A.M. N.T. 6/24/08 at 142-43.

## LEGAL ANALYSIS

Petitioner labeled two issues in his Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) (1925(b) Statement); this Court will address both issues together.[10]

Appellate counsel was ineffective for failing to claim that this Court erred by denying trial counsel's motion for a mistrial after inadmissible hearsay was elicited from Amir Sanchez (Sanchez). Petitioner contends that this Court should have granted an evidentiary hearing pursuant to Pa.R.Crim.P. 908 (908 Hearing).

In order to be eligible for PCRA relief, petitioner must prove, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the following circumstances:

---

[9] Petitioner testified that he had purchased the weapon illegally the year before, and carried it for protection because his neighborhood was dangerous. N.T. 6/26/2008 at 208-10.

[10] In his first issue, petitioner states that this Court erred by dismissing petitioner's petition without holding an evidentiary hearing, as petitioner would have been able to prove that appellate counsel was ineffective for failing to claim that this Court erred by denying trial counsel's motion for a mistrial after inadmissible hearsay was elicited from Amir Sanchez (Sanchez). In his second issue, petitioner states that this Court erred by denying petitioner's petition, as he proved that appellate counsel was ineffective for failing to claim that this Court erred by denying trial counsel's motion for a mistrial after inadmissible hearsay was elicited from Sanchez. As trial counsel's motion for a mistrial was correctly denied, both claims may be resolved together.

3

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543.

Trial counsel is presumed to have been effective; petitioner bears the burden to prove otherwise. Commonwealth v. Michaud, 70 A.3d 862, 867 (Pa.Super. 2013). In order to obtain relief based on a claim of ineffective assistance of counsel, a petitioner must establish:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

Id.

At trial, Willie Holmes (Holmes) testified that he did not see petitioner interact with, threaten, or shoot Roberts in the moments leading up to Roberts' death. The trial prosecutor confronted Holmes about a prior inconsistent statement that he had made to a friend, Sanchez. After disclosing to Holmes the contents of the statement that he had previously made to Sanchez, and providing him an opportunity to explain or deny making the statement, the prosecutor called

4

Sanchez to impeach Holmes. Sanchez's testimony was admissible pursuant to Pa.R.E. 613(b) as extrinsic evidence for impeachment purposes. As Sanchez's testimony was properly admitted, appellate counsel was not ineffective for failing to claim that this Court erred by denying petitioner's mistrial motion.

A witness may be impeached with extrinsic evidence of a prior inconsistent statement, provided that three requirements are satisfied:

(1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;
(2) the witness is given an opportunity to explain or deny the making of the statement; and
(3) an adverse party is given an opportunity to question the witness.

Pa.R.E. 613(b).

In Commonwealth v. Charleston, the Commonwealth called Nashua Sanders (Sanders) to testify. 16 A.3d 505, 509 (Pa.Super. 2011). Sanders acknowledged that she was familiar with the neighborhood in which the crime occurred, and that she knew both the victim and the defendant. Id. The prosecutor asked Sanders whether she had had a conversation with the victim's mother, Clara Stanton, informing Ms. Stanton that, about a week before the crime, the defendant told Sanders that he planned to rob the victim. Id. Sanders denied ever having had such a conversation with Ms. Stanton. Id. The trial court permitted the Commonwealth to call Ms. Stanton to testify regarding her conversation with Ms. Sanders. Id. at 527. The Superior Court held that the trial court properly admitted Ms. Stanton's testimony as extrinsic evidence to impeach Ms. Sanders pursuant to Pa.R.E. 613(b):

> Subsection one of the rule was complied with because the Commonwealth disclosed to Ms. Sanders the contents of her statement to Ms. Stanton. The Commonwealth also complied with subsection two because it asked Ms. Sanders if she made the statement and she denied making it. Finally, subsection three was satisfied, as the defense was given an opportunity to question Ms. Sanders. Therefore, Ms. Stanton's testimony in which she relayed Ms. Sanders' prior inconsistent statement was properly admitted for purposes of impeachment.

Id.

As in Charleston, in the case *sub judice*, the Commonwealth complied with each subsection of Pa.R.E. 613(b) and this Court properly determined that Sanchez's testimony was admissible to impeach Holmes. On direct examination, Holmes stated that he heard gunshots, saw Roberts stumble off of a bicycle, attempt to run, and then fall to the ground. N.T. 6/25/2008 at 37. The trial prosecutor asked Holmes whether he had seen anyone close to Roberts prior to hearing the shots. Holmes repeatedly denied having seen Roberts interact with anyone else:

ADA COELHO: And was anybody else near "Hov's" house when you saw Bahir riding his bike in the street?
MR. HOLMES: No.
ADA COELHO: Nobody else was there?
MR. HOLMES: No.
ADA COELHO: You didn't see Kyle?
MR. HOLMES: No.
ADA COELHO: You didn't see "Da Da"?
MR. HOLMES: No.
ADA COELHO: You didn't see Tremar [petitioner]?
MR. HOLMES: No.

Id. at 38.

ADA COELHO: Okay. And when you got over to Mr. Roberts, was there anyone else there besides yourself and Mr. Roberts?
MR. HOLMES: Some girl.
ADA COELHO: Some girl. Okay. You didn't see Kyle?
MR. HOLMES: No.
ADA COELHO: You didn't see him run from the scene at all?
MR. HOLMES: No.
ADA COELHO: Okay. How about "Da Da"; did you see "Da Da" come up on the street –
MR. HOLMES: No.
ADA COELHO: – from Ruby Street?
MR. HOLMES: No.
ADA COELHO: You didn't see "Da Da" on Ruby Street either?
MR. HOLMES: No.
ADA COELHO: How about Tremar; did you see him run from "Hov's" steps down Ruby Street?
MR. HOLMES: No.
THE COURT: Do you know the girl's name?
MR. HOLMES: No.
ADA COELHO: Okay. So at no point in time did you see Bahir and Tremar arguing?
MR. HOLMES: No.
ADA COELHO: No. At any point in time did you get in between Tremar and Bahir –
MR. HOLMES: No.

6

ADA COELHO: – and try and break it up?
MR. HOLMES: No.
ADA COELHO: You didn't do that?
MR. HOLMES: No.
ADA COELHO: So you certainly didn't see Bahir reaching for anything, did you?
MR. HOLMES: No.

Id. at 41-43.

On re-direct examination, ADA Coelho asked Holmes whether he had previously made a statement to a friend, Sanchez, about having seen Roberts engaged in a heated argument with petitioner prior to the shooting. ADA Coelho questioned Holmes about the details of the statement that he had made to Sanchez:

ADA COELHO: And did you ever tell any of your friends about what you saw or witnessed that night?
MR. HOLMES: No.
ADA COELHO: Nobody?
MR. HOLMES: No.
ADA COELHO: Never told anybody?
MR. HOLMES: No.
ADA COELHO: So you never told an individual that you know by the name of Amir that Bahir and Tremar were arguing, having verbal exchanges?
MR. HOLMES: No.
MR. GREENE: Objection.
THE COURT: Overruled.
ADA COELHO: And you never said that Tremar pulled out his TEC and told Bahir I should pop you right now?
MR. HOLMES: No.
ADA COELHO: Never told anybody that?
MR. HOLMES: No.
ADA COELHO: And that he said that, in fact, two times to Bahir.
MR. HOLMES: I didn't tell that to anybody.
ADA COELHO: Uh-huh. And that Bahir kept saying, "You ain't going to shoot – do a shooting. You ain't going to do anything. You're a bitch." You didn't tell Amir that that's what Bahir said to Tremar before he shot him?
MR. HOLMES: No.

Id. at 75-76.

As required by Pa.R.E. 613(b)(1), ADA Coelho "disclosed" the contents of Holmes' prior statement to him. ADA Coelho provided Holmes an "opportunity to explain or deny the making of the statement" as required by Pa.R.E. 613(b)(2). Holmes chose to deny having made the statement.

7

And, lastly, an "adverse party [was] given an opportunity to question the witness." After the prosecutor questioned Holmes about whether he made such a statement to Sanchez, this Court asked Mr. Greene whether he wanted to re-cross Holmes. N.T. 6/25/2008 at 78. "Anything else? Any recross, Mr. Greene?" Id. Mr. Greene chose not to do so. Id.

Once (1) the contents of Holmes prior inconsistent statement to him were disclosed to him, (2) an opportunity to explain or deny the statement was provided, and (3) the adverse party was given the opportunity to question Holmes, this Court permitted the trial prosecutor to call Sanchez to impeach Holmes by extrinsic evidence. When he took the stand, Sanchez divulged the details of Holmes' prior statement:

> ADA COELHO: Okay. Now, in addition to speaking with Tremar about what happened to Bahir when he was shot and killed, did you also speak with Willie?
> MR. SANCHEZ: Yes.
> ADA COELHO: All right. And did Willie tell you what he saw?
> MR. SANCHEZ: Yes.
> ADA COELHO: Okay. And what did Willie tell you?
> MR. GREENE: Objection.
> THE COURT: Overruled.
> MR. SANCHEZ: Willie told me, um, you know, Bahir had – you know, he basically said what 'Tre say. He said Bahir came down while they was all hanging out. I believe it was Tremar, Little Da Da, and Hov. That's all the names that I know was down there at the time of the shooting. They was all on Hazlehurst, you know what I mean, chilling, you know, out there laying; you know what I mean? So he said Bahir walked down. He said Bahir looked like he was wetted, meaning smoking embalming fluid. You know, some people call them dipped in cigarette with some type of fluid on there that, you know, drive these young boys crazy.
> ADA COELHO: Would that be PCP?
> MR. SANCHEZ: Yes.
> ADA COELHO: Okay. Go ahead.
> MR. SANCHEZ: Like, that's why I say when he came down on some high S-H-I-T. Excuse my language. So he said Tremar was selling weed. He said Bahir said, "Who got the weed out?" And 'Tre said, "I got it right here." So Bahir, you know, in the neighborhood sometimes in these neighborhoods, when we – when we purchase drugs on the corner, we like to see the quantity and quality of the weed. So what I told – Tremar had to buy a bag of weed, which Bahir smelled it, you know, said, you know what I mean, "Oh this be me."
> ADA COELHO: What does that mean, "This be me"?
> MR. SANCHEZ: Like, "I'm taking this bag of weed and I ain't paying for it."
> ADA COELHO: Okay. Then what happened?
> MR. SANCHEZ: Um –
> ADA COELHO: Or then what did Willie say?

8

MR. SANCHEZ: Well, Willie then said that -- after that he said, 'Tre said, "Man you trying – like, what, you trying to play me, like? They exchanged words. They started a little argument. You going – you going to give me – you ain't taking nothing from me. This is your second time." You know what I mean? So then Bahir kept calling, "You ain't going to do nothing." And he said Tremar pulled a TEC out and say, "Yo, I'm going to pop you. Give that up." And Bahir refused and said, "You a bitch. You ain't going to pop nothing. You ain't shooting nothing. You ain't tough." And he said Tremar aimed the TEC. So once he aimed it, he shot – he heard shots. So Bahir stumbled a little bit to the bicycle, collapsed at the bicycle. And, you know, it was over for him from there.

Id. at 172-74 (emphasis added).

This Court appropriately denied Mr. Greene's objection and permitted the Commonwealth to impeach Holmes with extrinsic evidence of the statement that he had made to Sanchez. Shortly after the above excerpt, Mr. Green requested to address this Court at sidebar. There, he made a motion for a mistrial. This Court denied his motion, but agreed to provide a limiting instruction to the jury. This Court then instructed the jury that they could only consider Sanchez's testimony about his conversation with Holmes to assess Holmes' credibility. N.T. 6/25/2008 at 181-82.

This Court correctly admitted Sanchez's testimony pursuant to Pa.R.E. 613(b) and appropriately instructed the jury on the limited scope for which the jury could utilize the evidence. Therefore, petitioner's claim that appellate counsel was ineffective for failing to raise this issue with the Superior Court lacks arguable merit and fails.

For the foregoing reasons, this Court correctly denied and dismissed petitioner's petition and the dismissal should be affirmed.

BY THE COURT:

M. TERESA SARMINA          J.

9