J-S05032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES R. CRUZ, JR. | : | |
| | : | |
| Appellant | : | No. 643 MDA 2021 |

Appeal from the PCRA Order Entered April 19, 2021
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001246-1993

BEFORE:  PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                     **FILED APRIL 14, 2022**

Appellant, James R. Cruz, Jr., appeals from the April 19, 2021 Order dismissing his second Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, as meritless.  After careful review, we affirm.

A prior panel of this court set forth the relevant facts and procedural history of this case as follows:

> Cruz was convicted of criminal homicide and theft on June 14, 1994[,] and was sentenced to life imprisonment.  At trial, the Commonwealth entered evidence relating to a number of hairs, recovered during the underlying criminal investigation, which implicated Cruz in the murder.  Specifically, hair identified as belonging to the victim was found in the cab of Cruz's truck, and hair identified as belonging to Cruz was found on the ropes that had been used to bind and fatally strangle the victim.
>
> To establish that the recovered hairs belonged to Cruz and to the victim, the Commonwealth relied, in part, on microscopic hair analysis.  FBI Agent Chester Blythe testified at trial regarding the use of microscopic hair analysis as a forensic method.  In this

testimony, Agent Blythe drew scientific conclusions that implicated Cruz in the murder of the victim. It is this testimony that forms the basis of Cruz's [] PCRA petition.

Per an agreement with the Innocence Project, the Department of Justice ("DOJ") ordered the FBI to undertake a review of cases that involved microscopic hair analysis, including Cruz's conviction. As a result of that review, the DOJ issued a letter on June 8, 2015[,[1]] that identified several areas in which Agent Blythe's testimony exceeded the scientific limitations of microscopic hair analysis. A copy of the DOJ letter was subsequently provided to Cruz and prompted [Cruz to file a] PCRA petition[, his second, on March 10, 2015].

*Commonwealth v. Cruz*, No. 1728 MDA 2016, 1-2 (Pa. Super. filed Sept. 29, 2017).

Acknowledging that this PCRA petition was untimely on its face, Cruz asserted that the DOJ letter reflected a "newly-discovered fact" pursuant to 42 Pa.C.S. § 9545(b)(1)(ii), and could, thus, serve as an excuse to the untimeliness of the petition. The PCRA court disagreed with Cruz and, on January 5, 2017, dismissed Cruz's second PCRA petition as untimely. On September 29, 2017, this Court affirmed. *Cruz*, No. 1728 MDA 2016. The Pennsylvania Supreme Court granted Cruz's petition for allowance of appeal, reversed the Superior Court, and remanded to the PCRA court for reconsideration in light of the Supreme Court's holding in *Commonwealth v.*

---

[1] The DOJ letter followed an April 20, 2015 FBI press release regarding the pervasive inaccuracy of FBI analysis' testimony related to microscopic hair analysis.

*Chmiel*, 173 A.3d 617 (Pa. 2017).[2]  *See Commonwealth v. Cruz*, 183 A.3d 348 (Pa. 2018).

Following remand, the PCRA court dismissed Appellant's Petition without a hearing finding that, even in light of the Supreme Court's decision in *Chmiel*, Appellant's Petition was untimely.  *See* PCRA Ct. Op., 12/14/18, at 1-2 (unpaginated).  The PCRA court reasoned that Appellant's 60-day time limit for asserting the newly-discovered fact exception started on April 20, 2015, the date of the FBI press release.  The PCRA court determined that Appellant's PCRA Petition, dated September 10, 2015, was, therefore, untimely.  On November 15, 2019, this Court reversed the order dismissing Appellant's Petition as untimely and remanded the case once again to the PCRA court for a determination of the merits.  *See Commonwealth v. Cruz*, 223 A.3d 274 (Pa. Super. 2019).

On July 27, 2020, the PCRA court ordered the Commonwealth to file a motion to dismiss Appellant's Petition within 60 days.  The order also provided that "by agreement of the parties, the [c]ourt will decide the issues raised [in the motion] on briefs and without a hearing."  Order, 7/27/20.  The Commonwealth timely filed its motion and accompanying brief, and Appellant filed a timely response.  On March 5, 2021, after considering the submissions

---

[2] In *Chmiel*, the Court held that the DOJ press release announcing the FBI's admissions "that its examiners gave flawed and scientifically unsupportable testimony" which it spread to state and local analysis, constituted a newly-discovered fact for purposes of overcoming the PCRA's jurisdictional time bar. *Chmiel*, 173 A.3d at 626.

of the parties, the PCRA court issued notice of its intent to dismiss Appellant's Petition pursuant to Pa.R.Crim.P. 907 without further proceedings in accordance with the "agreement of the parties to consider the matter on briefs and without [an] evidentiary hearing" and "having found no genuine issues concerning any material fact." Rule 907 Notice, 3/5/21.

On March 25, 2021, Appellant filed a response to the court's Rule 907 Notice. By Order filed on April 19, 2021, the PCRA court responded to Appellant's Rule 907 response and dismissed Appellant's Petition.

This timely followed. Appellant complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement and the court filed a Rule 1925(a) Opinion referring this Court to the reasons stated in the Rule 907 Notice.

Appellant raises the following four issues on appeal:

1. Did the PCRA [c]ourt for the third time[] dismiss the PCRA Petition without a merits review hearing where [Appellant] was otherwise entitled to the same, in violation of **Commonwealth v. Chmiel** or other controlling case law.?

2. Did the PCRA [c]ourt for the third time[] dismiss the PCRA Petition on the basis of insufficient after-discovered evidence which should have been addressed in the previous two dismissals, causing an unnecessary 6-year delay, three appeals to the Superior court and two appeals to the Supreme Court thereby creating an abuse of proceeding that resulted in a violation of [Appellant's] due process rights?

3. Did the PCRA [c]ourt misstate the facts?

4. Did the PCRA [c]ourt incorrectly find that [Appellant] was required to claim innocence on the basis this was a second PCRA Petition when in fact the first PCRA Petition went 15 years with no action because his counsel abandoned him[] and was never reviewed on the merits due to the delay caused by the abandonment?

- 4 -

Appellant's Brief at 4.

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. ***Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa. Super. 2007). "Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations." ***Commonwealth v. Anderson***, 995 A.2d 1184, 1189 (Pa. Super. 2010). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Paddy***, 15 A.3d 431, 442 (Pa. 2011).

To be eligible for relief pursuant to the PCRA, Appellant must establish, inter alia, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. ***Id.*** at § 9543(a)(3).

Relevant here, the PCRA provides relief for a petitioner who demonstrates his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). To establish a claim of after-discovered evidence, a petitioner must prove that the evidence: "(1) could not have been obtained prior to the conclusion of the trial by exercise of

reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." ***Commonwealth v. Tedford***, 228 A.3d 891, 911 (Pa. 2020) (citations omitted). The four-part test is conjunctive and if one prong is not satisfied, there is no need to analyze the remaining prongs. ***See Commonwealth v. Pagan***, 950 A.2d 270, 293 (Pa. 2008).

There is no right to a PCRA hearing; a hearing is unnecessary where the PCRA court can determine from the record that there are no genuine issues of material fact. ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008). "With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015).

Although Appellant has presented four distinct questions for our review, his counseled brief contains only two sections of argument titled "Genuine Issue of Material Fact, Misstatement of Facts" and "Violation of Due Process." Notwithstanding this violation of Pa.R.A.P. 2119(a), which requires that an appellant divide the argument "into as many parts as there are questions to be argued," we consider the arguments raised within each section to the extent that we can discern them and that they are "fairly suggested" by the statement of questions involved. ***See*** Pa.R.A.P. 2119(a), 2116(a).

In the "Genuine Issue of Material Fact, Misstatement of Facts" section, Appellant claims that the PCRA court erred in dismissing his PCRA petition without holding a hearing on its merits. Appellant's Brief at 13-14. Appellant also asserts that there is a genuine issue of material fact regarding the relevance to the crime of "physical hair evidence collected." *Id.* at 11. He further asserts that the PCRA court's conclusion that there was "substantial" evidence outside of the hair analysis testimony to support the jury's verdict "misstates the entire case[,]" especially where there was purportedly an alternative viable suspect who authorities were unable to locate. *Id.* at 15-16.

Appellant's assertion that the PCRA court erred in dismissing his petition without a hearing lacks merit as that the parties stipulated to the court resolving the issues on the briefs without a hearing. Moreover, it is well-settled that a PCRA hearing is unnecessary where the PCRA court can determine from the record that there are no genuine issues of material fact. Here, as explained below, it was apparent to the PCRA court that Appellant did not present any genuine issues of material fact necessitating an evidentiary hearing. Thus, the PCRA court did not err or abuse its discretion in dismissing Appellant's petition without holding a hearing.

With respect to Appellant's other claims, following our review, we conclude that the record belies Appellant's claim that the PCRA court misstated the facts of record and reached an erroneous conclusion. The Honorable Jonathan D. Grine, sitting as the PCRA court, has authored a comprehensive,

thorough, and well-reasoned Rule 907 Notice, citing the record, including the relevant testimony, and relevant case law in addressing Appellant's claim. The record supports the PCRA court's findings, and the Rule 907 Notice is otherwise free of legal error. We, thus, affirm on the basis of the PCRA court's March 5, 2021 Rule 907 Notice, which outlines the substantial evidence presented at trial that it was Appellant who committed the crimes and then properly concludes that the after-discovered evidence would not likely result in a different verdict. *See* Rule 907 Notice, 3/5/21, at 5-6, 10 (concluding that it properly dismissed Appellant's PCRA Petition because Appellant failed to demonstrate that a new trial would likely result in a different verdict because: (1) Agent Blythe's "testimony concerning the microscopic hair analysis was but one piece of evidence in the context of a seven day trial;" (2) "just under 50 witnesses [testified], and, overall, there was ample evidence" including evidence of Appellant's DNA present in semen and spermatozoa obtained from the victim's body and her underwear "upon which the jury returned the guilty verdict;" and (3) Agent Blythe's testimony regarding the hair analysis "was thoroughly mitigated by cross-examination.").

In the section of his brief entitled "Violation of Due Process," Appellant complains that "excessive delay[] and repeated dismissals," together with the PCRA court's refusal to hold a hearing on the merits of the instant petition, resulted in the violation of his due process rights. Appellant's Brief at 16-18.

Appellant has not cited in his brief to the place in the record where he preserved this claim. This is a violation of Pa.R.A.P. 2119(c) (requiring citation to the record) and, moreover, our review of the record indicates that Appellant has raised this issue for the first time on appeal. Accordingly, he has waived it. *See* Pa.R.A.P. 302(a) ("Issues not raised in the [lower] court are waived and cannot be raised for the first time on appeal.").

In sum, the record supports the trial court's findings. Accordingly, the court did not err in dismissing Appellant's PCRA petition without a hearing.

Order affirmed. The parties are instructed to attach a copy of the PCRA court's March 5, 2021 Rule 907 Notice to all future filings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/14/2022

McGraw
Trialonas

# IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
## CRIMINAL ACTION – LAW

COMMONWEALTH OF PENNSYLVANIA    )
    )
v.    )    CP-14-CR-1246-1993
    )
JAMES ROBERT CRUZ, JR.,    )
    )
Defendant/Petitioner    )

*Attorney for Commonwealth:*    *Sean McGraw, Esquire*
*Attorney for Defendant/Petitioner:*    *Steven P. Trialonas, Esquire*

## NOTICE OF INTENTION TO DISMISS PCRA PURSUANT TO PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 907(1)

On November 15, 2019, the Superior Court reversed this Court's dismissal of Defendant

James Cruz's ("Petitioner") Post-conviction Relief Act Petition ("PCRA") under 42 Pa. C.S.A.

§9541 *et seq.* based on the untimeliness of the petition and remanded the matter for further

proceedings.

Counsel agreed to submit the matter on briefs and without hearing and the Court directed

the parties to file briefs in an Order entered on July 31, 2020. The Commonwealth filed an

Amended Motion to Dismiss Second or Subsequent Post-conviction Relief Act Petition and Brief

in Support on September 25, 2020. On December 1, 2020, Petitioner filed a Brief in Opposition.

Petitioner raised only one issue in this PCRA asserting he was provided ineffective assistance of

counsel regarding the FBI Agent Chester Blythe's testimony regarding microscopic hair

comparison. Counsel for Petitioner and an Assistant District Attorney representing the Centre

County District Attorney's office reached a stipulation which was provided to the Court.

Counsel stipulated that Petitioner withdrew his claim based on ineffective assistance of counsel

and substituted his PCRA claim under 42 Pa. C.S.A. § 9543(a)(2)(vi) based on the purported

exculpatory evidence that has subsequently become available and would have changed the

☒O  ☐RD  ☐S

outcome of the trial if it had been introduced.

Petitioner filed the instant PCRA based on the Federal Bureau of Investigation's ("FBI") letter to him regarding Agent Chester Blythe's testimony concerning microscopic hair comparison at his jury trial which occurred in June, 1994. The FBI undertook to scrutinize the testimony of FBI analysts concerning microscopic hair analysis prior to 2000 and based upon this investigation, the FBI concluded that its examiners' testimony "'in at least 90% of cases contained erroneous statements' and that its analysts 'committed widespread, systematic error, grossly exaggerating the significance of their data under oath with the consequence of unfairly bolstering the prosecution's case.'" *Com. v. Chmiel*, 173 A.3d 617, 621 (Pa. 2017).

Upon consideration of Petitioner's PCRA, the briefs submitted by the parties, and after review of Petitioner's file, the Court intends to dismiss the PCRA as there are no genuine issues concerning any material fact and Petitioner is not entitled to post-conviction collateral relief for the reasons that follow.

### Background

On March 23, 1993, the body of a young deceased female was found at 6:20 in the morning by a passing motorist. The female was partially undressed and her body was on top of snow, near an on ramp for Pennsylvania State Route 26, about one and one-half miles south of the Interstate Route 80 in Centre County, Pennsylvania. Tire tracks were noticed at the berm near the body which appeared to be fresh tracks from a large vehicle. Investigating officers made castings of those tracks.

The deceased female was identified as seventeen-year old Dawn Birnbaum who had run away from the Elan School in Poland Spring, Maine. Ms. Birnbaum was last seen at a truck stop in Maine where she had been making calls on a pay phone and then was observed running

2

toward the trucks.

Subsequent autopsy and lab testing of Ms. Birnbaum revealed her cause of death was homicide by ligature strangulation. Spermatozoa and seminal fluid were found in her vagina, anus, and on her underwear. Lab testing revealed the male who was the source of the bodily fluids was a Type A secretor meaning the individual secretes his blood type antigens into his bodily fluids. Not all individuals secrete their blood type antigens into their bodily fluids; it is a genetic trait. Additionally, during examination of the body, a hair was found under the rope that was wrapped around Ms. Birnbaum's neck and hairs were found on the clothing and body.

Based on the last known whereabouts of the victim, the location of the deceased body being near a major interstate, and the large tire tracks found near the body, the investigators looked into what trucks were present at the truck stop in Maine where Ms. Birnbaum was last seen alive making telephone calls and collected fuel receipts from there and truck stops near where the body was found in Pennsylvania. (Tr. Randy Cohick 6/8/1994 at 98-100). Investigators were able to confirm that Ms. Birnbaum was at the Dysart truck stop in Maine through telephone records as she phoned her counselor at the Elan School to check in. (Tr. William Madden 6/8/1994 at 228; Mark Rosenburg 6/6/1994 at 154-155). After comparing the receipts, the investigators were able to determine that Petitioner, James Cruz with Century trucking had purchased fuel in both locations. (Tr. 6/8/1994 Cohick at 100). The tires on the tractor trailer operated by Mr. Cruz were consistent in pattern with the tire casts collected from the berm where Ms. Birnbaum's body was found. (Tr. 6/8/1994 Cohick at 100-101; Mark Brothers 6/6/1994 at 94-97). Evidence further reflected the Petitioner falsified his travel logs to reflect that he was in Altoona, Pennsylvania on the evening of March 23 and off duty from 6:30 p.m. until 11:00 a.m. the following day. (Tr. 6/8/1994 Madden at 239-239). When Petitioner

3

was shown a photo of Ms. Birnbaum he denied having ever met her although the DNA evidence demonstrated that his DNA was collected from her vagina, anus, and underwear. (Tr. Cohick 6/8/1994 at 117). Evidence was collected from the truck including hairs, fibers, and debris. The evidence collected from the truck and the hairs found on Ms. Birnbaum's body were sent to the FBI for analysis along with sample hairs from Ms. Birnbaum and Petitioner.

Petitioner was charged with murder, kidnapping, rape, involuntary deviate sexual intercourse, robbery, and theft. A jury trial was held and on June 6, 1994 through June 14, 1994 at the conclusion of which the jury found Petitioner guilty of murder of the first degree and theft and not guilty of the other charges. Prior to the start of the trial, Petitioner filed Motions in Limine to preclude evidence that random checks at the FBI had revealed no inaccuracies in Agent Blythe's prior hair analysis conclusions, and opinion evidence "about the statistical probabilities of Petitioner's hair being found on decedent's neck coupled with decedent's hair being found in the Petitioner's truck." The motion was granted in an Order entered on June 6, 1994, providing: "Witness will not be allowed to testify about statistical probabilities or the lack thereof or to make reference to how great they may or may not be of finding said hairs in their relevant places coincidently."

## Discussion

Pursuant to the stipulation of counsel, Petitioner is making the instant PCRA claim under Section 9543(a)(2)(vi) which provides:

> **(a) General rule.**--To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
>
> * * *
>
> (2) That the conviction or sentence resulted from one or more of the following:
>
> * * *

4

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

42 Pa.C.S. § 9543(a)(2)(vi).

In *Commonwealth v. Tedford*, the Pennsylvania Supreme Court analyzed a PCRA petition under Section 9543(a)(2)(vi) concerning microscopic hair comparison testimony after *Chmiel* and applied the following four-part test:

> To obtain relief under the PCRA on an after-discovered evidence claim, a Petitioner must demonstrate that the evidence:
>
> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Com. v. Tedford*, 228 A.3d 891, 911 (Pa. 2020) *citing Com. v. Small*, 189 A.3d 961, 969 (Pa. 2018); *Com. v. Pagan*, 950 A.2d 270, 292 (Pa. 2008). Additionally, the Court notes that Petitioner is not claiming innocence and the instant PCRA is not Petitioner's first PCRA. Pennsylvania appellate courts have noted, "In a second or subsequent post-conviction proceeding, all issues are waived except those which implicate a Petitioner's innocence or which raise the possibility that the proceedings resulting in conviction were so unfair that a miscarriage of justice which no civilized society can tolerate occurred." *Com v. Williams*, 660 A.2d 614, 618 (Pa. Super. 1995). To establish a *prima facie* showing of entitlement to relief, a PCRA petitioner must demonstrate "either that the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged." *Com. v. Medina*, 92 A.3d 1210 (Pa. Super. 2014) *citing Com v. Allen*, 732 A.3d 582, 586 (Pa. 1999).

Here, the testimony concerning the microscopic hair comparison was but one piece of

evidence in the context of a seven day trial with, by the Court's count, just under 50 witnesses, and, overall, there was ample evidence upon which the jury returned the guilty verdict against Petitioner. Mr. Blythe's testimony regarding hair comparison constituted about 45 pages of the voluminous record, including 8 pages of voir dire, 12 pages of direct examination, and 25 pages of cross examination in the framework of approximately 1295 total pages of the trial record. In considering the record evidence, the Court concludes that Petitioner has failed to demonstrate the fourth element of the test set forth in *Tedford* because Petitioner has not demonstrated by a preponderance of evidence the verdict would likely be different if a new trial were granted. Moreover, Mr. Blythe's testimony was rather conservative and was undoubtedly mitigated by defense counsel's effective and thorough cross-examination as reviewed below.

By way of summarizing key evidence and for context in considering the evidentiary record as a whole, the testimony on the first day of trial, June 6, 1994, of Isiadore Mihalkis is helpful. Mr. Mihalkis was a medical doctor with a subspecialty in forensic pathology. Dr. Mihalkis was contacted by Centre County Coroner Kerry Benninghoff to perform an autopsy on Ms. Birnbaum's body. The autopsy was performed on March 25, 1993. Dr. Mihalkis testified that when the rope was removed from the neck there was a hair beneath the knot and it was removed, photographed and surrendered to the police. Also hairs adhering to the clothing and body were collected and surrendered to the police. Swabs were taken and smears made into slides from Ms. Birnbaum's gums, throat, labia, vagina, and anus and they were provided to the police with instructions to keep them frozen until testing could be performed.

Chester Blythe testified on the second day of the trial, June 7, 1994. (Tr. 6/7/1994 at 109-159). At that time, Mr. Blythe had been employed as a special agent with the FBI for twenty-two years having joined the FBI in 1972. He graduated from undergraduate school

6

where he earned a major and minor in physical sciences and joined the FBI thereafter. He completed agent's training in Quantico, Virginia and was then assigned to the Indianapolis Field Office as a field agent for five and one-half years. Thereafter, he was reassigned to the FBI laboratory in Washington, specifically, in the microscopic analysis unit where he was trained to conduct comparisons and identifications of hair and textile fibers. At the time of his testimony, Mr. Blythe was assigned to the forensic science training center in Quantico, Virginia.

Mr. Blythe was provided with evidence for testing including specimen Q-8 which was debris removed from the passenger side of the door of Petitioner's truck and Q-24 which was a hair found under a ligature knot around Ms. Birnbaum's neck. Additionally, he was provided with sample hair being specimen K-3 which was a head hair sample from Ms. Birnbaum and K-5 which was a head hair sample from Petitioner. Mr. Blythe testified that he used a comparison microscope which has two, side by side platforms so that he could place two slides next to each other and look through the oculars to observe and compare the characteristics of each slide under magnification. He testified that there are approximately twenty-seven characteristics he rated when he analyzed and examined hair. Mr. Blythe stated for the jury, "Hair comparison is not like a fingerprint. It's not a positive means of identification. For example, if I take a fingerprint people can say that this is your and no one else's. I can't quite do that with hair. Hair is a very strong method of association or relating an individual to a hair. But it's not a positive means of association." (Tr. at 121).

Mr. Blythe concluded that the hair from Q-8 found in Petitioner's truck was consistent with having come from Ms. Birnbaum's head. (Tr. at 130). He again stated that microscopic hair comparison is not like a fingerprint. (Tr. at 130). When comparing the hair from Ms. Birnbaum and Petitioner's samples, Mr. Blythe noted they were not alike. Mr. Blythe compared

7

the hair from under the ligature knot and sample from Petitioner, and there were some similarities, but because of the limited sample size, consisting of only four hairs from the Petitioner, he was unable to establish the range of variation. As such, he notified the investigating officers that a larger sample from Petitioner would be required.

Mr. Blythe was provided with a specimen which contained additional sample hairs from Petitioner. The additional sample hair from Petitioner was sufficient for testing and Mr. Blythe concluded the hair found under the knot in the ligature around Ms. Birnbaum's neck exhibited the same characteristics and was consistent with the hairs in the sample provided from Petitioner. (Tr. at 133).

Mr. Blythe was thoroughly cross examined by Petitioner's counsel, Deborah Lux, Esquire, with regard to his conclusions concerning the hair comparisons. (Tr. at 133-159). Mr. Blythe agreed that hair comparisons *do not* constitute a basis for absolute personal identification and he *cannot* definitely state that a hair belongs to a given individual. He testified the inability to state that a hair belongs to a specific individual is because hairs are not individual enough, meaning the characteristics do not vary enough among different individuals to make a positive association. (Tr. at 134). He also agreed with Attorney Lux that microscopic hair comparison is subjective. (Tr. at 135). Later in the cross examination, Mr. Blythe again agreed he *could not* testify that the hair under the knot around Ms. Birnbaum's neck was 100 percent that of Petitioner (Tr. at 143). On review of the closing argument for defense, the Court notes Petitioner's other defense attorney, George Lepley, Esquire, repeatedly reminded the jury of the limitations of hair analysis as was set forth in the cross examination of Mr. Blythe which further minimized any possible overstatement of the significance of microscopic hair comparison in Mr. Blythe's testimony. (Tr. Atty. Lepley closing, 6/13/1994, at 98-135).

8

On the third day of the trial, June 8, 1994, Donald Bloser, a forensic scientist with the Pennsylvania State Police Crime Lab in Harrisburg, Pennsylvania testified. Mr. Bloser graduated with a Bachelor's Degree in chemistry from Lebanon Valley College and a Master's degree in chemistry from The Pennsylvania State University. He started working for the crime lab in January, 1980. Thereafter, he attended the FBI Academy for basic blood and semen identification. Additionally, he attended the FBI Academy for genetic maker identification and hair and fiber education. He testified after reviewing evidence collected, the vaginal and labial slides contained spermatozoa. Based on the number of sperm found in the vaginal slides, Mr. Bloser testified the intercourse occurred within twelve hours of the victim's death. Additionally, spermatozoa were found on the anal slides and in the underwear the victim was wearing when she was found on the snow bank. Mr. Bloser tested the Petitioner's blood sample and testified he was a Type A secretor with "PGM subtype 2 plus." Mr. Bloser testified about 32 percent of the population are Type A secretors and about 3 percent of the population are PGM subtype 2 plus. Based on Mr. Bloser's testing of Petitioner's blood, Petitioner could not be excluded from having been the source of the seminal stains collected in this case. (Tr. 6/8/1994 at 47-48).

Importantly, the testimony concerning the hair comparison was cumulative of and far less probative than the DNA evidence which the jury heard at trial through the testimony of Scott F. Ermlick which was stipulated to by counsel and read into the record on day three of the trial on June 8, 1994. Mr. Ermlick was employed as a forensic science supervisor in the DNA unit at the Pennsylvania State Police Regional Laboratory in Greensburg, Pennsylvania. He assisted with the establishment of the DNA unit at the laboratory. He graduated from The Pennsylvania State University in 1972 with a Bachelor of Science Degree and from the University of Pittsburgh with a Master's Degree in chemistry, biochemistry, genetics, and molecular biology. Mr. Ermlick

9

opined that within a reasonable degree of scientific certainty, the DNA of Petitioner was present in the semen and spermatozoa which stained the area cut from the crotch of the panties on the victim's body. (Tr. 6/8/1994 at 76). Further, he testified regarding the probabilities of the DNA match in various segments of the population, as such, the probability of finding an unrelated individual with the same DNA profile from the Caucasian population is approximately 1 in 620 million; from the black population is 1 in 2.7 billion; from the Hispanic population in the southeastern part of the United States is 1 in 235 million; from the Hispanic population in the southwestern part of the country is 1 in 200 million; and from a composite of all of the Hispanic population is 1 in 72 million. (Tr. at 76-77).

Based on the review of the record in this matter as discussed above, the Court concludes the Petitioner is not entitled to relief under 42 Pa.C.S. 9543(a)(2)(vi) based on the unavailability of exculpatory evidence concerning Mr. Blythe's testimony that has subsequently become available as it clearly would not have changed the outcome of the trial. *See Tedford supra.* Petitioner failed under Section 9543(a)(2)(vi) to prove by a preponderance of evidence that the outcome of the trial would have been different had what Petitioner asserts is exculpatory evidence involving the hair comparison testimony been introduced at the trial. Mr. Blythe's testimony was conservative on direct and was thoroughly mitigated by cross-examination. In sum, the substantial evidence as a whole, particularly the DNA evidence was compelling and supports the jury's verdict that James Cruz is guilty of murder of the first degree of Dawn Birnbaum and theft and Petitioner has not be subject to a manifest injustice in his jury trial.

## NOTICE and ORDER

AND NOW, this _5th_ day of March, 2021, upon review of Petitioner James Robert Cruz's Post-Conviction Relief Act Petition, for the reasons set forth above, this Court having

10

found no genuine issues concerning any material fact, Defendant not being entitled to post-conviction collateral relief, and finding no purpose would be served by further proceedings, and furthermore, by agreement of the parties to consider the matter on briefs and without evidentiary hearing, the Court intends to dismiss the PCRA without evidentiary hearing.

**Pursuant to Pennsylvania Rule of Criminal Procedure 907(1), Defendant James Robert Cruz has twenty (20) days from the date of this notice to respond.**

BY THE COURT:

Jonathan D. Grine, Judge

11