J-S25036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENDRICK COOPER, | : | |
| | : | |
| Appellant | : | No. 2705 EDA 2022 |

Appeal from the PCRA Order Entered October 3, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013617-2010

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED NOVEMBER 29, 2023**

Kendrick Cooper (Appellant) appeals from the order entered in the Philadelphia County Court of Common Pleas, following hearings, dismissing his second Post Conviction Relief Act[1] (PCRA) petition as untimely filed. Appellant, who was sentenced to life imprisonment for a jury conviction of murder of the first degree,[2] relied on newly discovered evidence, namely an eye witness' recantation of his identification of Appellant as the shooter. In this appeal, Appellant argues the PCRA court erred in: (1) determining the PCRA petition was untimely filed; (2) finding the eyewitness' recantation was

---

[1] 42 Pa.C.S. §§ 9541-9545.

[2] 18 Pa.C.S. § 2502(a).

not credible; (3) failing to properly consider the fact that the detectives, who interviewed the eyewitness, have been removed from the police force for improper conduct; and (4) refusing to reopen the evidentiary record so that Appellant could present evidence that friends of another PCRA hearing witness (the victim's brother) physically attacked the eyewitness outside the courtroom, following the PCRA hearing. We affirm.

## I. Facts & Underlying Procedural History

By way of background, we note the following testimony by Reginald Kinley (Witness) at trial. He sold drugs for Dana Blaylock (Victim). N.T. Jury Vol. 2, 10/5/11, at 109. The Witness had known Appellant for years, and the Victim and Appellant were friends as well. *Id.* at 143-44.

This Court previously summarized the Witness' trial testimony:

On February 24, 2009, at approximately 10 p.m., [the Witness] and [the Victim] met at the corner of 38th Street and Brandywine Street [in Philadelphia.] The two men got into [the Victim's] car, with [the Victim] in the driver's seat.

Just as [the Victim] put the key into the ignition, there was a tapping noise on the driver's side window. [The Victim] said "Oh shit," and [the Witness] turned . . . and saw [Appellant], whom both he and [the Victim] knew, pointing a revolver at the [driver's side] window. Standing behind [Appellant] was Maurice McIntosh, whom [the Witness] knew as well.

[The Witness] jumped out of the car, diving into nearby bushes only a few feet away. [Appellant] then attempted to pull [the Victim] out of the car through the driver's side door, but [the Victim] escaped through the rear passenger door[. Appellant] followed [the Victim] and shot him in the back and in the chest. As soon as he heard the shots, [the Witness] jumped out of the bushes and ran to safety.

Police discovered [the Victim's] body . . . and transported him to the [h]ospital, where he was pronounced dead on arrival.

On March 3, 2009, [seven days after the incident, the Witness] gave a statement to Homicide Detectives in which he identified [Appellant] as the shooter and gave a detailed account of the shooting. . . .

*See Commonwealth v. Cooper*, 562 EDA 2012 (unpub. memo. at 2) (Pa. Super. Jul. 30, 2013) (direct appeal) (trial transcript citations omitted & paragraph breaks added), *quoting* Trial Ct. Op., 4/27/12, at 1-3, *appeal denied*, 459 EAL 2013 (Pa. Jan. 22, 2014).

Appellant was charged with murder of the first degree and possessing instruments of crime[3] (PIC).

The matter proceeded to a jury trial commencing October 4, 2011. The Witness was the sole witness identifying Appellant as the shooter.[4] The Witness also stated that one to two weeks before the shooting, McIntosh (who stood behind Appellant during the shooting) asked the Victim to buy drugs from him, but the Victim declined. *See* N.T., 10/5/11, at 116-17.

Appellant did not testify or present any evidence. On October 7, 2011, the jury found Appellant guilty of murder of the first degree and PIC. The trial court immediately imposed the mandatory sentence of life imprisonment for

---

[3] 18 Pa.C.S. § 907(a).

[4] The Witness testified that although he was previously incarcerated for drug offenses, he did not have any open criminal matters at the time of the shooting or at Appellant's trial. N.T., 10/5/11, at 136-37, 140.

the murder charge, as well a concurrent term of three months to two years' imprisonment for PIC.

Appellant appealed, and on July 30, 2013, this Court affirmed the judgment of sentence. The Pennsylvania Supreme Court denied allowance of appeal on January 22, 2014.

## II. First PCRA Petition

On June 4, 2014, Appellant filed a timely, first *pro se* PCRA petition, followed by at least two additional PCRA petitions. Pertinent to this appeal, we note that Appellant averred he was innocent, and that it was the Witness who shot and killed the Victim. Appellant's Second Pro Se Supplement to the Original Collateral Petition, 11/19/15, at 8; Appellant's Formal Objection to the No Merit Letter and Motion for Relief in this Matter, 1/5/17, at 1.

Stephen O'Hanlon, Esquire (First PCRA Counsel) was appointed to represent Appellant, and he filed a petition to withdraw and a no-merit letter.[5]

The PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss the petitions without a hearing, but following Appellant's *pro se* response, the court conducted a brief proceeding on May 25, 2017. First PCRA Counsel advised the court, on the record, of the following: Appellant now alleged the

---

[5] ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

- 4 -

Witness wished to recant his trial testimony.[6]  **See** N.T. PCRA, 5/25/17, at 4.

At counsel's request, an investigator scheduled two appointments to obtain an

affidavit from the Witness, but apparently the Witness failed to attend.  **See**

**id.**  Following the PCRA court's Rule 907 notice, Appellant's family additionally

advised First PCRA Counsel that the Witness wished to recant.  **Id.**  The

Witness then failed to attend a third scheduled appointment.  **Id.**  Finally, First

PCRA Counsel advised the Witness to appear for the proceeding that day (May

25, 2017), but he failed to do so.  **Id.** at 5.  Counsel thus concluded that

despite "repeated efforts," he was unable to obtain a statement from the

Witness, and counsel reaffirmed his request to withdraw from representation.

**Id.**  The PCRA court granted counsel's request to withdraw and dismissed

Appellant's PCRA petitions.

Appellant appealed *pro se*.  This Court affirmed on July 20, 2018, and

our Supreme Court denied allowance of appeal.  **Commonwealth v. Cooper**,

1885 EDA 2017 (unpub. memo.) (Pa. Super. Jul. 20, 2018) (first PCRA

petition), *appeal denied*, 380 EAL 2018 (Pa. Dec. 28, 2018).

### III.  Second PCRA Petition

On November 5, 2019, Appellant filed the underlying, counseled PCRA

petition.  He now provided a written affidavit from the Witness, executed on

---

[6] First Plea Counsel made no mention of Appellant's allegation that it was the Witness who was the shooter.  **See** N.T. PCRA, 5/25/17, at 4.

October 24, 2019, recanting his identification of Appellant as the shooter. Appellant averred this statement was newly discovered evidence under the PCRA's Subsection 9545(b)(1)(ii) timeliness exception.[7]

On July 7, 2022, the PCRA court conducted an evidentiary hearing on both the issues of timeliness and the merits of Appellant's recantation claim.[8] The Witness testified that while sitting next to the Victim in the car, he saw only the stomach and belt area of the shooter and could not see their face. N.T. PCRA Evidentiary H'rg, 7/7/22, at 30-31, 73. The Witness also testified he was coerced by the homicide detectives into giving a statement. He claimed: he was transported to the detectives' station and held in a locked, windowless room for three to four hours; the detectives questioned him for an hour or two, during which time the Witness stated he did not see the shooter's face; the detectives left him alone in the locked room for another four to five hours; and the detectives questioned him again, this time stating the Victim's family believed the Witness knew Appellant was the shooter, showing him photographs of Appellant and McIntosh, and threatening to charge him with conspiracy. *Id.* at 42-47, 52. The Witness felt frustrated

---

[7] Appellant also filed an amended, counseled petition on November 3, 2020, responding to the Commonwealth's motion to dismiss.

[8] *See* N.T. PCRA Evidentiary H'rg, 8/17/22, at 90 (PCRA court stating, "I don't think I actually ruled on [the timeliness of the PCRA petition], but I did say we would hear evidence on both the issues.").

and afraid, and had been kept in the room and had not slept for almost 24 hours. *Id.* at 49-51. At this time, the Witness told them Appellant was the shooter. *Id.* at 54. The detectives prepared a written statement to that effect, which the Witness signed, and then he was permitted to leave. *Id.* at 54.

When asked why he did not tell the truth at trial, the Witness replied he was nervous and scared that he would be prosecuted. N.T., 7/7/22, at 56-57. The Witness testified he felt guilty about making the false statements, his "conscience was . . . eating [him] up," and when a friend of the Victim's family, Dawayne Briggs, informed him he had retained an attorney for Appellant, the Witness agreed to meet with him. *Id.* at 58-59, 62, 96. Finally, we note that at the time of this PCRA hearing, the Witness was not under any probation or parole supervision, and did not have any open criminal charges. *Id.* at 21.

The PCRA court held a second evidentiary hearing on August 17, 2022, at which the Victim's brother, Andre Blaylock (Brother) testified. He did not testify at trial,[9] but now stated that an hour or two after he left the hospital

---

[9] At trial, however, the parties stipulated on the record that if Brother were called to testify, he would state that on the night of the shooting, at the hospital, he spoke to Witness, but Witness did not mention Appellant's or McIntosh's name with regard to the shooting. N.T. Jury Trial Vol. 3, 10/6/11, at 145.

Meanwhile, the Witness testified, consistently, that a few minutes after the shooting, he went to the hospital, where he met with the Victim's family, but he did not tell them Appellant or McIntosh were involved with the shooting, out of fear of revenge for "snitching." N.T., 10/5/11, at 128-31.

on the night of the shooting, the Witness called him and told him Appellant was the person who shot the Victim. N.T., 8/17/22, at 19, 37, 43. The Witness then took the stand again, denying he called Brother that night or told anyone who the shooter was. *Id.* at 66-67.

Next, on September 16, 2022, Appellant filed a motion for the PCRA court to reopen the evidentiary hearing so that he could present evidence of an altercation in the hallway, outside the courtroom, following the last PCRA hearing on August 17, 2022.[10] Appellant averred the following: the Witness was "punched in the face" and "attacked by a group of" men accompanying Brother. PCRA Ct. Op. at 10. Although Brother did not assault the Witness, Brother falsely told the prosecutor it was the Witness who "started the fight with [Brother's] cousin." *Id.* at 10 & n.9. However, surveillance video showed the Witness "did not start the fight." *Id.* at 10. Appellant claimed this evidence would show: (1) Brother's lack of credibility, as shown by his lying to the prosecutor; (2) alternatively, Brother's "inability to perceive and recall events," if he were mistaken about what happened in the hallway; or (3) Brother's bias, shown by his willingness to "to lie to exculpate someone who attacked" the Witness. *Id.*

_____

[10] The certified electronic record includes an entry for this September 16, 2022, motion, but the document itself appears as seven blank pages. We glean the averments made therein from the PCRA court's opinion, the accuracy of which neither party disputes on appeal. *See* PCRA Ct. Op., 1/18/23, at 10.

On September 29, 2022, the PCRA court announced, on the record with counsel present, its decision to deny Appellant's request to reopen the evidentiary record. The court found, *inter alia*, that none of his proffered evidence would be admissible under Pa.R.E. 608(b),[11] and in any event, the evidence would have *de minimis* probative value. ***See*** N.T., 9/29/22, at 5; PCRA Ct. Op. at 10-11.

On October 3, 2022, the PCRA court issued the underlying order, dismissing Appellant's PCRA petition. First, the court found the petition was untimely filed, as Appellant failed to properly invoke the newly discovered evidence exception, where he had known, at the time of his first petition in 2017, of the Witness' willingness to recant. PCRA Ct. Op. & Order, 10/3/22, at 3. Second, the court reasoned that even if the petition were timely, no relief would be due because the court found the Witness' recantation not credible. ***Id.*** at 4-5.

Appellant filed a timely notice of appeal and complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

## IV. Statement of Questions Involved

Appellant presents the following issues for our review:

---

[11] ***See*** Pa.R.E. 608(b)(1) (generally, "the character of a witness for truthfulness may not be attacked or supported by . . . extrinsic evidence concerning specific instances of the witness' conduct").

I. Whether the PCRA court's denial of [Appellant's] PCRA was supported by the record and without legal error, to wit:

a. Was the PCRA court's finding that [Appellant's] PCRA was untimely was error and an unreasonable determination of the facts.

b. Was the PCRA court's credibility findings regarding [the Witness] and the PCRA court's complete failure to consider that the detectives who originally questioned [him] and were alleged to have coerced his trial testimony[,] were removed from the police force and/or arrested [for] crimes of moral turpitude and *crimen falsi* and did not testify at the PCRA hearing[,] error and/or an unreasonable determination of the facts.

II. Was the PCRA court's denial of [Appellant's] motion to reopen the evidentiary hearing (filed on September 16, 2022) error and/or an unreasonable determination of the facts.

Appellant's Brief at 9-10.

## V.  Standard of Review

We first note the applicable standard of review:

Our standard of review in a PCRA appeal requires us to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error.  The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court.  . . . The PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020) (citations omitted).

## VI. Timeliness of PCRA Petition

Appellant acknowledged the underlying November 5, 2019, petition was filed beyond the PCRA's general one-year deadline. *See* 42 Pa.C.S. § 9545(b)(1) (generally, any PCRA petition shall be filed within one year of the date the judgment becomes final, unless the petitioner alleges and proves one of the three timeliness exceptions applies).[12]

In his first issue, Appellant maintains the PCRA court erred in concluding he did not meet the newly discovered evidence exception. Appellant avers the first time the Witness recanted his prior statements was in his October 24, 2019, affidavit, and he filed the PCRA petition within a month, on November 5th. Appellant's Brief at 18, 21. To the extent the PCRA court found the Witness had previously "expressed his **potential** willingness to recant," Appellant insists there was no "tangible, actionable newly discovered evidence until" the Witness in fact gave the statement. *Id.* at 18. Appellant recounts that First PCRA Counsel attempted, unsuccessfully, to schedule several meetings with the Witness, and thus counsel was left with "no option but to

_____

[12] Appellant's judgment of sentence became final on April 22, 2014 — the 90-day deadline for filing a writ of *certiorari* with the United States Supreme Court, following the Pennsylvania Supreme Court's denial of allowance of appeal on January 22, 2014. *See* 42 Pa.C.S. § 9545(b)(3) (judgment becomes final at the conclusion of direct review, including discretionary review in the United States Supreme Court and Pennsylvania Supreme Court, or at the expiration of time for seeking review); U.S.S.Ct.R. 13. Appellant then generally had one year, until April 22, 2015, to file a PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1).

move forward with his *Finley* letter and the PCRA court . . . no option but to grant it." *Id.* at 20-21. Appellant contends the PCRA court's ruling stands for the proposition that whenever an incarcerated person "receives even a whiff that there may be new evidence[, the Subsection] 9545(b)(2) clock begins to tick," and inmates will be forced to file a PCRA petition before they know the petition would have merit. *Id.* at 23. We agree with Appellant's reasoning.

"[T]he PCRA's timing provisions [are] jurisdictional in nature, and no court may entertain an untimely PCRA petition." *Small*, 238 A.3d at 1280. Pertinently, a petition may be filed beyond the general one-year period when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). A petition invoking this exception must be filed within one year of the date the claim could have been presented. 42 Pa.C.S. § 9545(b)(2).

This Court has explained:

> The newly discovered fact exception has two components[:] 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. Due diligence requires the petitioner "take reasonable steps to protect his own interests."

> However, it does not require "perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances to uncover facts that may support a claim for collateral relief." As such, "the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented." "A petitioner must explain why he could not have obtained the new fact(s) earlier with the exercise of due diligence."

- 12 -

*Commonwealth v. Brensinger*, 218 A.3d 440, 448-49 (Pa. Super. 2019) (*en banc*) (citations and some quotation marks omitted). Review of whether a petitioner has properly invoked the newly discovered facts exception "does not require any merits analysis of an underlying after-discovered-evidence claim." *Commonwealth v. Reeves*, 296 A.3d 1228, 1232 (Pa. Super. 2023) (citation omitted).

Here, the PCRA court rejected Appellant's argument that the one-year period did not begin to run until the Witness executed the written recantation affidavit. *See* PCRA Ct. Op. & Order, 10/3/22, at 3. The court observed: Appellant acknowledged "he had previously heard, during the pendency of his first PCRA petition" in 2017, that the Witness "had expressed a willingness to recant[,]" and the Witness confirmed this, by testifying, at the July 7, 2022, PCRA hearing, that he had told Appellant's mother and brother in 2017 that he was willing to recant. *Id.* The court thus reasoned Appellant "admittedly knew about the relevant newly discovered fact . . . almost two years before [the Witness] signed the affidavit." *Id.*

We emphasize, however, that in May of 2017, First PCRA Counsel advised the PCRA court, on the record, that he or his investigator scheduled three separate appointments for the Witness in order to provide an affidavit, but the Witness failed to appear. *See* N.T., 5/25/17, at 4. First PCRA Counsel provided the court with the investigator's report, detailing her efforts to meet with the Witness. *Id.* at 5-6. On the day before the proceeding, First PCRA

Counsel called the Witness, who "hemm[ed] and haw[ed] about what[ ] time he would show up," and counsel ultimately advised him to appear at court the following morning. *Id.* at 4-5. However, the Witness again failed to appear, and because "it has not been possible to get any kind of statement from [him] despite repeated efforts[,]" First PCRA Counsel reaffirmed the averments in his *Finley* letter, that the PCRA petition would have no meritorious claim. *Id.* at 5.

Against this background, without reaching the merits of Appellant's underlying claim, we conclude he properly invoked the newly discovered fact exception. *See* 42 Pa.C.S. § 9545(b)(1)(ii); *Reeves*, 296 A.3d at 1232. We agree that any prior willingness to recant, on the Witness' part, must be viewed in context with his failure to attend the three scheduled meetings where he would have provided a formal statement, as well as his failure to attend the scheduled court proceeding. It is not disputed that Appellant's counsel undertook steps to obtain a formal statement, but they were ultimately unsuccessful. Accordingly, we determine Appellant has explained why he could not have earlier obtained the new fact — the Witness' present recantation — with due diligence. *See Brensinger*, 218 A.3d at 448-49.

The Witness did not provide a written recantation until two years and five months after the May 2017 hearing, and within 12 days thereof, Appellant promptly filed the underlying PCRA petition. In light of all the foregoing, we disagree with the PCRA court's finding the petition was untimely filed.

Nevertheless, we do not disturb the court's conclusion that no relief is due on the merits.[13]

## VII.  Credibility of the Witness' Recantation

First, Appellant challenges the PCRA court's finding that the Witness' recantation was not credible.  With respect to the court's reasoning that the Witness did not recant for a decade, Appellant contends the court "ignores the reality of current day Philadelphia," where "witnesses are reluctant to come forward" out of fear they will be harmed.  Appellant's Brief at 27.  Appellant points out the Witness could have also feared prosecution for perjury, where the Commonwealth had confirmed at the July 7, 2022, hearing that it "would not guarantee transactional immunity" if the Witness testified he was recanting.  *Id.* at 28-29.  Additionally, where the PCRA court did not believe the Witness' testimony that he could not see the shooter's face, Appellant maintains the Witness was only in the car a few seconds before he ran away. *Id.* at 29.  Appellant also emphasizes the Witness' testimony that he was coerced by detectives into falsely identifying him.  *Id.* at 30.

To this end, Appellant also asserts both detectives, Nathanial Williams and Gregory Singleton, who had questioned Appellant, have been removed from the police force for, respectively: "covering up the crimes of [a]

---

[13] *See Commonwealth v. Smith*, 194 A.3d 126, 138 (Pa. Super. 2018) (this Court may affirm the PCRA court's ruling on any legal basis supported by the certified record).

colleague[ ] in the Homicide Unit[;]" and "using his position to improperly use police databases to get information on a civilian and then [lying] about it." Appellant's Brief at 31-32. Appellant further avers the PCRA court erred in ignoring the Philadelphia Police Department's homicide unit's "institutional bias" against minorities.[14] *Id.* at 31. We conclude no relief is due.

We reiterate that we view the PCRA evidence of record in the light most favorable to the prevailing party (here, the Commonwealth), and the PCRA court's "factual findings and credibility determinations, when supported by the record, are binding upon this Court." *See Small*, 238 A.3d at 1280.

Once a petitioner establishes the PCRA court's jurisdiction under the newly discovered evidence exception, they may then present a substantive after-discovered-evidence claim under 42 Pa.C.S. § 9543(a)(2)(vi). *Reeves*, 296 A.3d at 1232. That subsection provides relief when a petitioner proves by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

"[T]he PCRA court as factfinder is in a superior position to make the initial assessment of the importance of [recantation] testimony to the outcome

---

[14] We note the Witness testified at the PCRA hearing that both detectives, who questioned him, were black. N.T., 7/7/22, at 47.

of the case." ***Commonwealth v. Medina***, 92 A.3d 1210, 1219 (Pa. Super. 2014) (*en banc*) (citation omitted). "[T]he deference normally due to the findings of the [PCRA] court is accentuated where what is involved is recantation testimony[.]" ***Id.*** (citation omitted). Our Supreme Court has stated:

> [T]his Court has repeatedly "acknowledged the limitations inherent in recantation testimony, which has been characterized as 'extremely unreliable.'" In fact, we have remarked that "[t]here is no less reliable form of proof, especially where it involves an admission of perjury." For that reason, we have emphasized that, when addressing an after-discovered evidence claim premised on recantation testimony, "the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." "Unless the [PCRA] court is satisfied that the recantation is true, it should deny a new trial."

***Commonwealth v. Small***, 189 A.3d 961, 977 (Pa. 2018) (citations omitted).

Here, the PCRA court reasoned it had carefully observed the Witness' extensive testimony at both trial and the PCRA hearings. PCRA Ct. Op. at 8. At **trial**, the Witness stated he saw Appellant at the car window and described how Appellant held the gun. ***See*** N.T., 10/5/11, at 122 ("[Appellant] was just holding it up to the window like this. . . . It was pointed in the window, but it was on [the Victim's] side."). The Witness responded to further questioning as follows, identifying McIntosh as well:

> [Commonwealth:] And you looked over, how did you recognize [Appellant]? Could you see his face?
>
> [Witness:] Yes.
>
> Q. Could you see his whole face?

- 17 -

A.  Yes.

Q.  This is someone you had known for years?

A.  Yes.

Q.   When you looked over to your left and you saw [Appellant], did you see anyone else near him?

A.  Yes.

Q.  Who else did you see?

A.  [McIntosh.]

                    *    *    *

Q.   [A]s much as you could see of [Appellant], do you remember what he was wearing?

A.  I just seen black, a black hoody or sweater or shirt which is black.

Q.  Do you know if the hood was up or down?

A.  . . . It wasn't all the way up, but it was up.

*Id.* at 121-23.

Finally, the Witness twice denied, at trial, that the detectives threatened or coerced him:

[Commonwealth:] And then when you got [to the detective station] and you gave them a statement . . . were they threatening you or anything like that?

                    *    *    *

[Witness:]  No, they wasn't, no, they wasn't threatening.

                    *    *    *

Q. Did anybody make any promises or threats to you when you gave your statement whatsoever?

A. No.

*See* N.T., 10/5/11, at 133, 136.

The PCRA court found the Witness' subsequent testimony at the PCRA hearing, recanting his trial testimony, was not credible. PCRA Ct. Op. at 8. The court considered:

> [I]t took years for [the Witness] to recant, and even longer before he was willing to sign an affidavit, with no credible explanation. At trial, [the Witness] had credibly expressed fear from the neighborhood for testifying against [Appellant. N.T., 10/5/11, at 131] ("I was scared and you know how . . . people say you snitching and all . . . ."). Similarly, in his statement to police [the Witness] expressed fear about identifying [Appellant] because [Appellant] and his friends might "come after" [the Witness] and his family. [The Witness] therefore had a strong motive to recant.
>
> His version of the facts at the evidentiary hearing, that sitting in the passenger seat of a car, he could see no more than six inches near the waist of someone knocking on the driver's side window with a gun, was not believable. Similarly incredible was his testimony . . . that he falsely told the police, and later the jury, that [Appellant], who was then his long-time friend, was the person knocking on the car window.

*Id.* (some record citations omitted & paragraph break added).

Appellant's arguments on appeal would require this Court to reweigh, in his favor, the credibility of the Witness' testimony, and to supplant the PCRA court's findings with our own. This we cannot do, as we defer to PCRA court's credibility determinations, especially with respect to a recantation claim. *See Small*, 189 A.3d at 977; *Medina*, 92 A.3d at 1219. The PCRA provided reasons for not believing the Witness' recantation, made eight years after the

jury trial, and as they are supported by the record, its credibility findings are binding on this Court. *See Small*, 238 A.3d at 1280.

We likewise do not disturb the PCRA court's rejection of the Witness' claims that the detectives coerced him into naming Appellant as the shooter. Although Appellant extensively cites the Philadelphia Police homicide department's alleged longtime discrimination against minorities, the PCRA court simply found the Witness was not credible in now claiming the detectives forced him to make a false statement. Instead, the court credited the Witness' "compelling" trial testimony that the detectives did not force him into saying anything. PCRA Ct. Op. at 9. Accordingly, we conclude no relief is due on Appellant's recantation claim.

## VIII. Reopening Evidentiary Record

In his final issue, Appellant asserts the PCRA court erred in denying his request to reopen the evidentiary record in order to present evidence that the Witness "was pummeled outside the courtroom after he testified" at the second PCRA hearing on August 17, 2022. Appellant's Brief at 36. Appellant maintains that at the hearing, Brother was solely called to question the truthfulness of the Witness' recantation. *Id.* at 38. Appellant cites Pa.R.E. 608(b), which provides:

> **Specific Instances of Conduct.** Except as provided in Rule 609 (relating to evidence of conviction of crime),
>
> > (1) the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic

evidence concerning specific instances of the witness' conduct; however,

(2) in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not including arrests) of the other witness, if they are probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible.

*See* Pa.R.E. 608(b)(1)-(2).

Appellant then avers the PCRA court failed to address Subsection (b)(2) — which he contends would have permitted cross-examination of Brother as to who initiated the fight and what Brother told the Commonwealth about the fight. Appellant's Brief at 38. Appellant insists such questioning would have addressed **Brother's** lack of truthfulness, bias, and ability to recall. *See id.* We conclude no relief is due.

First, it appears Appellant misconstrues the provisions of Rule 608(b)(2). That subsection provides a trial court with the discretion to allow an attack, on cross-examination,

the credibility of a witness who testifies **as to the reputation of another witness** for truthfulness or untruthfulness [with] specific instances of conduct (not including arrests) **of the other witness**, if they are probative of truthfulness or untruthfulness . . . .

*See* Pa.R.E. 608(b)(2) (emphases added).

Applying the plain language of this subsection to the case *sub judice*, we reiterate that Brother's testimony was sought at the PCRA hearing to cast light on **the Witness**' credibility. Under Rule 608(b)(2), the PCRA court could

- 21 -

have permitted cross-examination of Brother as to the **Witness'** specific instances of conduct. ***See, e.g. Commonwealth v. Minich***, 4 A.3d 1063, 1069 n.2 (Pa. Super. 2010) ("Although not at issue in this case, the trial court may permit the cross-examination of a character witness with specific instances of conduct showing the truthfulness or untruthfulness **of the person about whose character he or she testified**. Pa.R.E. 608(b)(2)."). Instead, Appellant sought cross-examination of Brother with **Brother's** own specific instances of conduct. Such cross-examination is not addressed by Rule 608, and thus this rule does not support Appellant's argument.

Furthermore, the PCRA court reasoned:

[E]vidence that [Brother] may have made a mistake in describing an incident having nothing to do with the murder case here at issue would be completely irrelevant and inadmissible.

As to bias, it is true that the proffered evidence may tend to show that [Brother] disliked [the Witness] and therefore was biased against him. However, such evidence would have been cumulative and had only *de minimis* probative value. [The Witness] was a defense witness in a PCRA proceeding intended to obtain a new trial for the person convicted of murdering [Brother's] brother. Unquestionably, [Brother] was biased against [the Witness]. The Court, as factfinder, had already considered that bias when assessing his credibility.

PCRA Ct. Op. at 11. We point out the PCRA court's assessment of the credibility of the Witness' recantation did not include any consideration of Brother's credibility generally — that is, Brother's credibility did not play a role in the court's weighing of whether the recantation was believable. For this reason, as well as our review of the language of Rule 608(b)(2), we do not

disturb the PCRA court's denial of Appellant's request to reopen the evidentiary hearing.

## IX. Conclusion

For the foregoing reasons, we conclude no relief is due on Appellant's issues on appeal. Accordingly, we affirm the PCRA court's order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  11/29/2023